(No. 37432.—

CLIFFORD W. CORDES, Appellee, *vs.* THEODORE J. ISAACS, Director of Revenue, *et al.*, Appellants.

*Opinion filed March 25, 1963.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellants.

GIFFIN, WINNING, LINDER & NEWKIRK, of Springfield, (JAMES M. DRAKE, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This is a suit for declaratory judgment and *mandamus* brought by Clifford W. Cordes, seeking reinstatement to a position in the Department of Revenue of the State of Illinois, and also seeking back pay for the period during which he had been discharged. The trial court found the issues for the plaintiff, ordered that he be reinstated, and directed payment of his salary from July 1, 1961, to date of reinstatement. This case is here on a direct appeal because the State has a direct financial interest in the result. *Gibbs* v. *Orlandi, ante,* p. 368.

The State contends that the judgment, both for reinstatement and for payment of back salary, was improper because one Robert R. Cutler, who allegedly was performing some of the duties of Cordes, had not been joined as a party defendant.

Plaintiff Cordes was employed from March 24, 1953, in the Department of Revenue in a statutory post described as "'Executive I'". His duties were to supervise motor-fuel-tax refunds and allied functions. On April 17, 1961, the

plaintiff was discharged, on the ground that the Director of the Department of Revenue had determined that his severance was necessary for purposes of economy. Cutler, with less seniority than Cordes, was retained, and apparently took over some of the duties previously handled by Cordes. The State therefore argues that because Cutler was not made a party to the suit, the trial court could not consider the case on its merits, citing *People ex rel. Markee* v. *Barrett,* 383 Ill. 207.

We do not think the decision in that case is applicable to the present situation. There the plaintiff claimed that she was entitled to employment in preference to one of two other persons, by reason of strict seniority rights. A necessary part of the determination of the court therefore was whether the plaintiff did indeed have such seniority rights as would entitle her to insist upon the prior discharge of one of the other employees. On the particular issues presented, we stated: "It is obvious that if the order of the trial court be sustained, at least one of the two stenographers now employed * * * would have to be discharged." (383 Ill. at 211.) Inasmuch as the decision in favor of the claimant would adversely affect one or the other of the retained employees, they were necessary parties, because they were entitled to an opportunity to be heard to establish their seniority in contradiction to that of the claimant.

Such is not the case here. Plaintiff, although claiming seniority over Cutler, does not rely upon nor suggest a determination of right to employment upon a strict seniority basis. From the pleadings, the testimony, and the order of the trial court, we understand the issue to be not whether Cordes's position was usurped by an employee to whom Cordes was senior, but whether he had been discharged by processes not in conformity with the Personnel Code and regulations adopted thereunder. We do not think Cutler is a necessary party because the reinstatement of Cordes,

if it be required, would not adjudicate the employment rights of Cutler. We see no reason why we should not consider this case upon its merits.

It is admitted by the plaintiff that the Directors of Personnel and of Revenue have discretion in making layoffs, but he contends that in his case the Directors failed to follow the Personnel Code. That part of the Personnel Code (Ill. Rev. Stat. 1959, chap. 127, pars. 63b101 *et seq.*), in effect at the time of the layoff which is pertinent, provided that the Director of Personnel shall prepare rules for all positions and employees, and that such rules, if not disapproved by the Civil Service Commission, shall have the force and effect of law. Section 8b of the Code requires that such rules shall provide: "For layoffs by reason of lack of funds or work, abolition of a position or material changes in duties or organization, and for re-employment of employees so laid off, giving consideration in both layoffs and re-employment to performance record and seniority in service," and "for the promotion of staff development and utilization by means of records of performance of all employees in the State Service, which performance records shall be considered as a factor in determining * * * the order of layoffs because of lack of funds or work."

At the time plaintiff was discharged there were certain rules in effect which had been made by the Department of Personnel pursuant to the foregoing statutory provisions. Rule 7 provided for performance records which "shall be used as an aid * * * in determining * * * the order of layoffs". Rule 7 further provided that each operating agency shall make a written review of the employee's work performance and conduct twice each year, and that a copy of each completed performance record shall be discussed with the employee, signed by him, and become a part of his personnel record. Rule 24 provides that layoffs shall be within organizational units established by the operating

agency in accordance with a plan approved by the Director of Personnel, and provides further that consideration shall be given to performance records and seniority within each class; also, the plan shall contain information for justification for layoff of employees out of seniority order.

It appears from the record that no layoff plan had been approved by the Director of Personnel, or submitted to him by the Director of Revenue. The Director of Personnel testified: "Our department knew that this layoff was out of seniority order; we also knew that a copy of the performance record and other pertinent data to justify the layoff out of seniority order was not attached to the separation form or to the layoff letter." By approving a layoff without first having an approved plan for layoffs, and by approving a layoff without any reference to performance records, the Director of Personnel did not observe the rules of that department, and by failing to require a plan, or documents in support of a plan and in justification of a layoff, did not afford the plaintiff the intended protection of the statute and the rules.

The answer of the Director of Revenue admits that performance records were not kept on plaintiff, but alleges that other records were used in evaluating plaintiff's work. The Director testified that he had some documents before him, but there is nothing to indicate that these were performance records of the plaintiff. What those records might have been we do not know. While the Director of Revenue admittedly did not prepare a plan for layoffs, he claimed that his acts were done in good faith and in substantial compliance with the Personnel Code and Rules. We concede the Director's good faith, but we do not think that is sufficient. A layoff without a plan, and without reference to the records commanded by rule to be kept, transgresses the discretionary power of a director under the Personnel Code.

The Director of Revenue and the Director of Personnel

did not follow the explicit requirements of the statute and the rules promulgated under the statute, in laying off Cordes. His layoff was therefore improper, and the trial court correctly ordered his reinstatement and directed payment of his back pay.

*Judgment affirmed.*