HAKKI TAMIMIE, Plaintiff-Appellee, *v.* ALBERT GLASS, Acting Director of Mental Health, *et al.,* Defendants-Appellants.

(No. 12135; <span style="color:black"></span>)

Fourth District—October 24, 1973.

William J. Scott, Attorney General, of Chicago, (Jerrald B. Abrams, Assistant Attorney General, of counsel,) for appellants.

James M. Drake, of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This is an appeal by certain officials of the State of Illinois from a writ of mandamus directing that the plaintiff be restored to employment by the State and a declaratory judgment that the layoff of the plaintiff was improper because not in compliance with the Personnel Code and regulations adopted thereunder.

On November 19, 1969, Dr. Tamimie was notified that his employment as Research Scientist II in the Illinois Department of Mental Health at the Illinois State Research Hospital, Galesburg, Illinois, was being terminated effective December 31, 1969. The notice stated:

"Abolition of position because research related to poultry science is being terminated as no longer relevant to the mental health research program of this institution."

The plaintiff, who holds a Ph.D. in animal husbandry, was hired by the Galesburg hospital in 1963 to study and conduct experiments in the area of animal science. According to testimony of both Dr. Tamimie and the director of research at the hospital, plaintiff was first assigned to a unit called the "Animal House", but in 1964 was transferred to the other unit of the hospital, the Research Laboratory. The nature of his work apparently remained the same, in general terms dealing with nutrition in various animals and in the last years concentrating on phenylketonuria in chickens.

In 1969, when the plaintiff was laid off, there were a number of other persons employed as Research Scientists II at the Research Laboratory. However, a form entitled "State Position Allocation List" dated October 6, 1969, allocated all the other Research Scientists II to the Research Laboratory while the plaintiff alone is listed under the Animal House. Likewise, the letter to the director of personnel requesting approval of the layoff stated the reason being that research in poultry science was being discontinued, and that "Dr. Tamimie has been engaged in the poultry science research. No other positions are affected with the discontinuance of this program since Dr. Tamimie is the only research scientist assigned to this particular program and all laboratory personnel are concerned with other animal research programs."

Under these circumstances, whether by accident or design, the plaintiff was laid off without consideration being given to the performance records and seniority in service of other persons as required by section 63b108b.13 of the Personnel Code (Ill. Rev. Stat. (1969), ch. 127, par.

63b108b.13), and without referring to and considering allocation lists and organizational charts containing a list of all employees with their performance records and seniorities in the class and organizational unit in question before laying off the plaintiff as required by Department of Personnel rule 2—560.

However, as stated above, the testimony established that although plaintiff was originally assigned to the "Animal House", shortly thereafter and up until the time of his layoff he was assigned to the Research Laboratory. The director of research at the Galesburg hospital testified as follows:

"Q. Was Dr. Tamimie originally hired within that unit referred to as the 'Animal House'?

A. You are not hired to a unit, you are hired for a position.

Q. Was he hired originally to a position within the 'Animal House'?

A. You don't hire anybody for a position in a house, you hire them for what their specialty might be.

J. Medical Research Associate II?

A. Yes.

Q. Was he orginally assigned to duties within the 'Animal House'?

A. He wasn't assigned there, his duties made him go there."

That testimony, as well as the reference to other animal research in the above-mentioned letter to the director of personnel, and the testimony of a former colleague as well as the plaintiff himself, all indicate that there was other animal research being conducted at the hospital in addition to the poultry science.

The trial court rendered the writ of mandamus and declaratory judgment after finding the plaintiff was entitled to the procedures provided by statute and the rules of the Personnel Code because it is clear he was employed by the Research Laboratory where there were seven other Research Scientists II, and that his layoff was accomplished under the erroneous proposition that Dr. Tamimie was in a class or unit by himself as the only research scientist in the Animal House unit.

The underlying issue is what the terms "position" and "organizational unit" mean in the context of the Personnel Code and rules: do they refer simply to the rank or pay grade classification, such as Research Scientist II, or do they refer to permanently structured units or departments within an agency, or to particular job specialties or even specific projects that an individual is performing. In essence, the State's argument is that merely because two employees have the same rank or pay grade, it does not mean that they are interchangeable. For example, if an institution

employed two physicians both holding the same rank, one an ophthalmologist and the other an orthopedist, it does not mean that each can perform the job of the other; nor if, for budgetary or other reasons, the facility must eliminate one of the jobs, should the State be required to lay off the eye doctor merely because he has less seniority even though his specialty is much more in demand. So, in the instant case, the State argues that the plaintiff had worked exclusively with animals—mainly chickens—which was determined to have little value to the study and treatment of human mental health, while the other persons of the same rank as the plaintiff—Research Scientist II—worked either with humans or in nutritions which was felt to be more closely related to the hospital's purpose and needs. The plaintiff argues that although the particular research he had been doing in recent years involved chickens he had worked with many other animals and that he had worked only briefly in the "Animal House" and thereafter had worked in the Research Department where other Research Scientists II worked, implying that many of them also used animals in their studies and thus, according to the statute and the regulations, the files and records of the other Research Scientists II should have been considered along with his before the layoff.

The trial court avoided the issue of the mixing of apples and oranges by finding that the discharge was based on a mistaken assumption—that the plaintiff was still assigned to the "Animal House" and was the only Research Scientist II there and that on that basis no other personnel's records need be considered. The State responds to that conclusion on appeal by arguing that even if the plaintiff was no longer technically assigned to the "Animal House", it did not change the fact that his degree was in animal husbandry and his work with chickens had been determined to be less relevant to human mental health than the research of the other Research Scientists II with their diverse specialties.

■■ The State is correct that it should not be forced to retain a man whose work is no longer needed and terminate employment of one whose work is relevant merely because the former has seniority. However, neither the statute nor the rules require such an unreasonable result—rather it requires a consideration of performance and seniority of those within an organizational unit with some justification being shown when a layoff out of seniority order is sought.

In *Cordes v. Isaacs*, 27 Ill.2d 383, 189 N.E.2d 236, where the plaintiff contended that he had been laid off in contravention of the Personnel Code requirements, the Illinois Supreme Court said:

"* * * Plaintiff, although claiming seniority over Cutler, does not rely upon nor suggest a determination of right to employment upon a strict seniority basis. From the pleadings, the testimony,

and the order of the trial court, we understand the issue to be not whether Cordes's position was usurped by an employee to whom Cordes was senior, but whether he had been discharged by processes not in conformity with the Personnel Code and regulations adopted thereunder. * * *."

Here this procedure was entirely bypassed, either by design or by accident, by representing that the plaintiff was the only Research Scientist II in the "Animal House" and that all others of the same rank were in the Research Laboratory, thus implying the plaintiff's work was completely unrelated and non-interchangeable with the others so that the procedures for review of performance and seniority would not be required.

■■ In fact, the evidence indicates that shortly after coming to work at the hospital, plaintiff was transferred to the Research Laboratory; that he worked with animals other than chickens, although his work in recent years was concentrated on poultry for particular experiments; and that at least some of the other Research Scientists II also used animals in experiments. In sum, the plaintiff did not establish that he is qualified to do the work of the other Research Scientists II and that one of them junior to him should have been laid off in his place, but that was not his burden. Plaintiff did establish that there were other Research Scientists II engaged in similar work and that merely because research on chickens was being discontinued did not mean that his skills and professional knowledge were necessarily irrelevant. It may be that a comparison of the records of all the Research Scientists II in the Research Laboratory will indicate that the elimination of a particular project or program justifies laying off plaintiff due to this particular expertise and experience being different from that of the other seven and no longer useful to the hospital. However, plaintiff is at least entitled to the protection of the procedure provided in the Personnel Code and the rules formulated pursuant thereto. Therefore the trial court is affirmed.

Affirmed.

CRAVEN, P. J., and SMITH, J., concur.