MICHAEL P. COHEN, Plaintiff-Appellant, v. THE CIVIL SERVICE COM-MISSION *et al.*, Defendants-Appellees.

First District (3rd Division) No. 87—2531

Opinion filed April 13, 1988.

Michael P. Cohen, of Chicago, appellant *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Michael Cohen filed for administrative review with the Illinois Civil Service Commission (Commission) after he was laid off from his position with the Illinois Department of Employment Security (IDES). The Commission upheld his termination. Plaintiff's complaint named as defendants the Commission, IDES, and the Illinois Central Management Services. The trial court upheld the Commission's ruling and plaintiff appeals.

Plaintiff was employed by IDES as a hearings supervisor. He began his service with this agency as a hearings referee in 1972 and was promoted to hearings supervisor in 1979. Both positions held by plaintiff were within the benefit appeals division of the agency. As the result of a decreased agency budget, plaintiff was officially laid off on May 31, 1986.

Plaintiff appealed his termination to the Commission on June 5, 1986. In a letter to the executive secretary of the Commission, plaintiff stated that he had been laid off in contravention of section 8b.13 of the Personnel Code, which provides that in determining who should be laid off, for layoffs by reason of lack of funds or work, consideration must be given to one's performance record, seniority,

and the impact on achieving equal employment opportunity goals. (Ill. Rev. Stat. 1985, ch. 127, par. 63b.108b.13.) Plaintiff contended that seniority was not taken into consideration in light of the fact that he had more seniority than at least two other hearings supervisors in the appeals division.

On December 4, 1986, Gail Bradshaw, manager of human resource management for IDES, responded to plaintiff's challenge stating that it was the position of IDES that plaintiff was laid off in accordance with the provisions of the Personnel Code. Bradshaw stated in a letter to the executive secretary of the Commission that the hearings supervisors less senior to plaintiff were in different and separate units of the organization within the appeals division and that the layoff plan was implemented by the units of organization in seniority order of the positions targeted. Bradshaw further stated that plaintiff's unit, the "suburban unit," operated as an official and separate entity within the organization of the appeals division with specific responsibilities different from those of the other units of the organization. Bradshaw also stated that the supervisory position in plaintiff's unit of the organization was subjected to layoff due to a decrease in the workload of that unit.

On December 31, 1986, the executive secretary of the Commission notified plaintiff of its proposed decision that there had not been a violation of the Personnel Code or rules. The secretary asserted that plaintiff's layoff was in accordance with section 302.520 of the Illinois Administrative Code, which states that "an indeterminate layoff shall be within organizational units justified by operations and approved prior to the layoff by the Director" of the Department of Central Management Services. (80 Ill. Adm. Code 302.520(a) (1985).) In support of this conclusion, the secretary noted that organizational charts supplied by IDES demonstrated the suburban unit's placement within IDES' operational structure as a subsection of the appeals division. The secretary also found it noteworthy that the positions assigned to the suburban unit were designated by a section number which was used solely for positions assigned to the suburban unit. The secretary conceded that two other hearings supervisors were less senior than plaintiff. However, their status was irrelevant since they belonged to separate organizational units. Since plaintiff was the only hearings supervisor in the suburban unit, the approved unit of layoff, the secretary concluded that the Personnel Code had not been violated.

Plaintiff responded to the proposed disposition of the Commission stating that whether the suburban unit constituted a subsection of

the appeals division was a question of law or fact entitling him to a hearing. Plaintiff included in his response two letters from previous employees of IDES. In a letter dated January 5, 1987, John Sachtleben identified four units within the appeals division, one being the suburban unit. Sachtleben noted that the referees and supervisors were not locked into a permanent assignment and each could perform work for the various units. He specifically stated that plaintiff had performed work in the other units. Plaintiff also submitted a letter from Henry Warshell, a former IDES technical advisor. Warshell stated that the job description and specifications for the position of supervisor were the same for all of the supervisors regardless of their being in a particular unit. Warshell noted that the chief hearings referee had the ability to transfer the supervisors to other units if the need arose.

The secretary of the Commission requested Bradshaw to reply to plaintiff's contentions to help resolve the issues of the appeal. Bradshaw responded by reiterating IDES' position that the suburban unit was an official organizational unit with the appeals division and therefore a properly designated unit targeted for layoff. Bradshaw noted that prior to September 1, 1985, the suburban unit referees conducted hearings four days a week in suburban areas and spent one day a week in the central office. After September 1, 1985, in an attempt to save money, the suburban unit was assigned to conduct all hearings in the central office. Bradshaw maintained that regardless of this location change, the suburban unit remained intact and the suburban unit referees continued to report to plaintiff.

On March 19, 1987, the Commission adopted the findings of its staff and denied plaintiff's appeal. The trial court denied plaintiff's petition for administrative review, finding that the Commission's denial of his appeal was not against the manifest weight of the evidence.

■ On appeal, plaintiff and defendants agree that an administrative agency's findings concerning factual questions are *prima facie* true and correct. Plaintiff asserts that the present case presents a question of law. We agree. The facts here are undisputed and what remains at issue is whether the suburban unit constituted an organizational unit within the context of the Personnel Code and rules for purposes of determining layoffs.

■ Section 8b.13 of the State government personnel code states that for layoffs by reason of lack of funds or work, an employee's performance record, seniority in service, and the impact on achieving equal employment opportunity goals must be taken into consider-

ation. (Ill. Rev. Stat. 1985, ch. 127, par. 63b108b.13.) Consistent with this statute, the Illinois Administrative Code mandates that an indeterminate layoff shall be within organizational units justified by operations and approved by the Director of the Department of Central Management Services. (80 Ill. Adm. Code 302.520(a) (1985).) Prior to a layoff, the Director must be provided with an explanation of the organizational unit selected, reflecting agency, facility, geographical, operational and other elements deemed relevant by the agency head. (80 Ill. Adm. Code 302.520(b) (1985).) Further, an employee's performance record and continuous service should be given consideration within status groups and in accordance with the layoff plans submitted to the Director. 80 Ill. Adm. Code 302.530(b) (1985).

■ On appeal, plaintiff maintains that his seniority and job performance should have been considered. Plaintiff asserts that there was no such unit as the suburban unit, and therefore his layoff was not in accordance with the Personnel Code.

Plaintiff cites the case of *Tamimie v. Glass* (1973), 15 Ill. App. 3d 1, 303 N.E.2d 17, as determinative of the issue in the present case. In *Tamimie,* the plaintiff challenged his dismissal as a research scientist II for the State Department of Mental Health. The evidence showed that although the plaintiff was originally assigned to the "Animal House" for research, shortly thereafter he was assigned to the research laboratory for poultry science. The evidence also showed that several other research scientists II were conducting animal research in the research laboratory. Plaintiff maintained that the files and records of the other research scientists II should have been considered with his prior to the layoff. This court affirmed the trial court's grant of declaratory judgment in favor of plaintiff finding that his layoff was in violation of the Personnel Code resulting from an erroneous representation that plaintiff was in a class or unit by himself as the only research scientist in the "Animal House" unit. We found it sufficient that plaintiff had established that there were other research scientists II engaged in similar work in the research laboratory and merely because research on chickens was being discontinued did not mean that plaintiff's skills and professional knowledge were necessarily irrelevant. Therefore, plaintiff's seniority and job performance should have been taken into consideration. Plaintiff herein cites *Tamimie* for the rule of law that where employees in the same agency do substantially similar work, they are considered to be in the same organizational unit for purposes of determining layoffs.

We do not see this as a general rule to be taken from *Tamimie.* The court there did look to the similarity in the types of work done

by employees having the same job classification to determine the organizational units for purposes of layoff. However, the court looked to the similarity of job tasks because there were no set units delineated by the organizational structure itself. When it became clear that plaintiff did not work in the "Animal House" unit, the court was required to consider the other research scientists II and the types of work they were performing in order to define the organizational unit. *Tamimie* does not stand for the rule that even when certain employees are employed in similar or identical jobs, they cannot be in separate organizational units of the same agency.

In the present case, we do not dispute the similarity of job tasks of all IDES supervisors or the interchangeability of supervisors when the need arises. Regardless, the structure of IDES is broken into organizational units. As shown in a letter submitted by plaintiff, at one time the agency was divided into four units: the Chicago unit, the downstate unit, the interstate unit and the suburban unit. Plaintiff admitted that he was the supervisor of the suburban unit in charge of seven to nine referees. Until the time of plaintiff's layoff, he continued to supervise these referees.

Furthermore, *prior to the layoff,* in accordance with the Personnel Code, IDES submitted to the Central Management Services an organizational chart showing the suburban unit as a separate and distinct unit as well as certain information showing that members of the suburban unit were assigned a section number which was used solely for positions assigned to the suburban unit.

Based on this undisputed evidence, we believe that the suburban unit was a separate organizational unit for purposes of determining layoffs. Because plaintiff was the only hearings supervisor in the suburban unit, and the suburban unit was a proper organizational unit, the Commission did not err in finding that his layoff was proper.

■ Plaintiff's next contention is that he was improperly deprived of a hearing by the Commission. The Illinois Administrative Code states that if in the judgment of the Commission, a substantial issue of fact or law exists, the parties will be notified of a date of hearing. (80 Ill. Adm. Code 1.100(d) (1985).) The record before us demonstrates that plaintiff was given an opportunity to respond at every step of the Commission's decision-making process. Plaintiff presented the Commission with his arguments and evidence and was given a chance to respond to the contentions of IDES human resource management. After a review of both parties' contentions, the Commission determined that no hearing was necessary and denied plaintiff's appeal. We cannot say the Commission's decision that no substantial

issue of fact or law existed was in error or that any due process violation occurred.

For the foregoing reasons the judgment of the circuit court of Cook County denying plaintiff's petition for administrative review is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.