WAYNE PENROD, Plaintiff-Appellee, *v.* THE DEPARTMENT OF CORRECTIONS *et al.*, Defendants-Appellants.

First District (1st Division)    No. 78-218

Opinion filed May 21, 1979.

William J. Scott, Attorney General, of Chicago (William E. Dicks, Jr., Assistant Attorney General, of counsel), for appellants.

John J. Muldoon, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Wayne Penrod (plaintiff) a certified State civil service employee, was laid off from his position at the Stateville Correctional Center. The trial court reversed the administrative decision which had approved the layoff. The Department of Corrections and the Department of Personnel (defendants) appeal.

Commencing in 1949, plaintiff served 27 years with the Department of Corrections. He was laid off from his position as a Business Administrator II on April 9, 1976. Plaintiff had handled the budget for all divisions, approved requisitions for all divisions and supervised the head of the accounting division. Plaintiff testified the written notice of layoff he received cited lack of work as the reason for the layoff.

At the administrative hearing on January 20, 1977, all of the testimony came from plaintiff and State officials whom plaintiff called as adverse witnesses. Joe Baldin, Assistant Chief Personnel Officer for the Department of Corrections, testified. He stated that "his [plaintiff's] job was abolished because Dave [the warden] reorganized and reassigned his budgetary duties to his assistant wardens and his division heads." He testified further that prior to plaintiff's layoff, a new position was created at the Joliet complex. At one time Joliet and Stateville were one institution. Mr. Baldin testified the individual who filled the position handled some of the duties previously performed by plaintiff. Mr. Baldin was uncertain as to when the new position was created. He testified that when it was created, it was not known that plaintiff's job would be abolished.

Dave Brierton, warden of the Stateville Correctional Center, testified plaintiff's layoff resulted from a reorganization of said facility. He testified discussions about the reorganization began in May of 1973. The effect of the reorganization was to divide plaintiff's responsibilities among the department heads, the warden and assistant warden. He testified he did not recall when it was first determined that plaintiff's job would be abolished.

The warden further testified he believed he had offered plaintiff assistance in finding a new position and that plaintiff refused to accept any aid. He testified he had not discussed with plaintiff the right of an employee to a voluntary reduction in status or to acceptance of a lesser position within the system because plaintiff was not interested in assistance. He further testified plaintiff was not offered the newly created position at Joliet prior to his layoff because a final decision had not been made to abolish plaintiff's position. He stated, "I had thought about it [abolishing the job], but had not come to that decision." He testified when

the plaintiff was laid off the position had already been filled. He also testified it was filled by an individual with less seniority than plaintiff.

Plaintiff testified there was a review of midmanagement positions in February 1975. As a result certain positions were to be justified or abolished. Plaintiff testified abolition of positions was to occur prior to March 1, 1975. He testified his position was not abolished at that time. Plaintiff also testified concerning the newly created position at Joliet and stated that the duties thereof and his duties at Stateville were essentially the same. Plaintiff testified his position required approximately 10 hours of overtime a week. He further testified Warden Brierton did not inform him he might take a voluntary reduction and remain on the payroll.

Defendants contend in their brief before this court that the trial court erred in applying statutory administrative review rather than common law *certiorari*; plaintiff was laid off as the result of a valid reorganization; and plaintiff failed to overcome the presumption that layoffs as a result of a valid reorganization are done in good faith.

■■ Defendants contend the trial court erred by not applying the principles of common law *certiorari* which they allege is more limited in scope than statutory administrative review. We cannot agree. The Illinois Supreme Court has established that there is no longer a viable difference between these two types of proceedings. In *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 541, 367 N.E.2d 1286, citing *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186, and *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785, the court stated:

> "This court has recently held that the substantial differences that at one time existed between common law and statutory *certiorari* have been all but obliterated."

In addition, defendants urge that the trial court improperly substituted its judgment for the discretion and judgment of the agency. The supreme court established the appropriate standard of review for cases of this type in *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713. In *Davern*, the court stated reviewing courts may not "reweigh the evidence, but are limited to a determination whether the final decision of the administrative agency is just and reasonable in light of the evidence presented." In the instant case the trial court finding was consistent with the guidelines established in *Davern*.

The facts before us demonstrate defendants failed to present any evidence at the administrative hearing. In addition, the testimony elicited from the employees of defendants in adverse examination was vague and contradictory. Warden Brierton testified the reorganization was first discussed in May of 1973, but he stated he could not recall when it was

first determined plaintiff's job would be abolished. He used this reasoning to justify the failure of the department to make available to plaintiff a similar position created at a neighboring complex. This job was given to an individual with less seniority than plaintiff.

The warden was vague as to other protections that plaintiff as a 27-year veteran of the department was entitled to receive prior to being laid off. The warden testified he told plaintiff "that if he wanted me to get him another job, I would help him." But he also testified he did not mention to plaintiff any of the vacancies that were available. Plaintiff testified without contradiction that he was never informed that he might be able to take a voluntary pay reduction and remain as a State employee. Also, when asked if he informed plaintiff of vacancies within the system, the warden replied generally that "all vacancies are posted."

The State of Illinois Department of Personnel Rules, section 2—550, clearly states that certified employees shall "be advised of the opportunity to request a voluntary reduction to a current vacant position."

The Personnel Code (Ill. Rev. Stat. 1977, ch. 127, par. 63b108b.13) provides layoffs may occur as a result "of lack of funds or work, abolition of a position or material change in duties or organization." However, this provision of the Code also provides consideration must be given to "performance record" and "seniority in service." This court construed said provision of the Code in *Tamimie v. Glass* (1973), 15 Ill. App. 3d 1, 4, 303 N.E.2d 17, in which we stated:

> "The State is correct that it should not be forced to retain a man whose work is no longer needed and terminate employment of one whose work is relevant merely because the former has seniority. However, neither the statute nor the rules require such an unreasonable result—rather it requires a consideration of performance and seniority of those within an organizational unit with some justification being shown when a lay off out of seniority order is sought."

The record before us is devoid of evidence that plaintiff's performance record or seniority was considered prior to the abolition of his position and the substitution of a person of lesser seniority to do the same type of work.

■■■ Defendants urge there is a presumption that layoffs resulting from a valid reorganization are done in good faith. (See *Levesque v. Walker* (1974), 24 Ill. App. 3d 828, 321 N.E.2d 278, and *Chestnut v. Lodge* (1966), 77 Ill. App. 2d 281, 222 N.E.2d 36.) Defendants ask this court to consider *Chestnut* and *People ex rel. Behnke v. McLaughlin* (1935), 362 Ill. 274, 199 N.E. 810, in which such layoffs were upheld. We agree with defendants that such a presumption exists. However, it was the finding of the trial court, and it is the opinion of this court, that while a reorganization

occurred it does not necessarily follow that defendant's layoff was a result of such a reorganization. On the contrary this record shows an unexplained hiatus between the departmental reorganization in February 1975 and the layoff of plaintiff in April of 1976. Plaintiff's testimony was that all abolitions of positions resulting from the 1975 reorganization were to occur before March 1, 1975. This testimony was uncontradicted. We expressly conclude that the result reached by the Department of Personnel, which is by necessary implication a finding that plaintiff's layoff resulted from the departmental reorganization, is contrary to the manifest weight of evidence. The facts before us establish plaintiff was notified he was being laid off as a result of a "lack of work." No attempt was made by defendants to present evidence in support of this theory.

After the hearing the trial court made a careful and complete statement of his reasons for reversing the administrative decision. We are fully in accord with this result. The order appealed from is affirmed.

Order affirmed.

McGLOON and CAMPBELL, JJ., concur.