CARLA ODELL, Plaintiff-Appellant, *v.* THE VILLAGE OF HOFFMAN ESTATES, Defendant-Appellee.

First District (1st Division)   No. 81—2740

Opinion filed November 29, 1982.

William J. Haddad, of Alito, Haddad & Reyna, of Chicago, for appellant.

Richard N. Williams, of Hoffman Estates, for appellee Village of Hoffman Estates.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Carla Odell, appeals from a decision of the circuit court of Cook County affirming the finding of the village manager of defendant, village. of Hoffman Estates, that cause existed for discharge of plaintiff from her position as civilian radio dispatcher.

On appeal, plaintiff raises the following issues: (1) whether the hearing before the village manager failed to meet the minimum requirements of due process; (2) whether there was "cause" for dismissal of plaintiff; (3) whether the information which plaintiff allegedly revealed was learned in the course of employment and was confidential; and (4) whether the decision of the village manager was against the manifest weight of the evidence.

Plaintiff was charged by the chief of police of Hoffman Estates with revealing confidential information learned in the performance of her duties as civilian radio dispatcher for the Hoffman Estates Police and Fire Departments in violation of the village policy manual and the radio operators procedures manual. An administrative hearing was held before the village manager at which plaintiff was represented by counsel. The village manager found that plaintiff had committed a breach of confidentiality which adversely affected members of the public and plaintiff was discharged for cause. Plaintiff filed a common law writ of *certiorari* in the circuit court seeking review of the vil-

lage's decision. The circuit court affirmed.

The record discloses that the confidential information concerned an incident in which two juveniles, sons of Mrs. J.M.,[1] were arrested on suspicion of shoplifting on January 29, 1981. One boy, age 13, reportedly quipped to police, "Do I get to kiss my mother before they throw me in the slammer?" During a shift change at the station, the radio operations supervisor related this comment to other civilian personnel, including plaintiff.

Barbara Pierce, a bartender at a restaurant and lounge called the Neighborhood Inn, testified that at about 11 o'clock that night plaintiff came into the lounge after work and spoke with Pierce at the bar. Pierce testified that when she mentioned that Mrs. J.M. was late for her job as cook at the Neighborhood Inn, plaintiff told her about the arrest of Mrs. J.M.'s sons and the boy's humorous comment. Pierce testified that later that evening several police officers joined plaintiff but that Pierce did not learn of the boys' arrest by overhearing the conversation of the police who were in the bar that night.

Mrs. J.M. testified that when she arrived for work the next day Pierce asked about her sons. Further conversation revealed that Pierce knew about the boys' arrest. When asked how she learned of this information, Pierce replied that plaintiff had told her. Mrs. J.M. testified that she was "very upset" to find out that others knew about her sons' arrest. She reported the incident to the radio operations supervisor.

Approximately five weeks later the chief of police ordered an investigation and confronted plaintiff with Mrs. J.M.'s accusation. At the hearing, plaintiff testified that on January 29, 1981, she entered the Neighborhood Inn with several police officers and that they sat together at the bar. Plaintiff testified that they discussed police work generally including the comment made by the juvenile. Plaintiff testified that she was aware of the confidentiality requirement and that she never mentioned the incident to any civilian and especially not to Pierce, whom plaintiff does not consider to be a friend. Plaintiff further testified that she has a college degree in criminology, that her chosen career is in criminal justice and that she had been an employee of Hoffman Estates for 13 months.

A Hoffman Estates police officer testified that on the evening in question, he, plaintiff and a group of five or six police personnel entered the Neighborhood Inn together after work. The officer testified

---

[1]The name of Mrs. J.M. is in the record but not used in this opinion because of the juveniles involved.

that they stood by the bar and that several people in the group discussed the juvenile incident. Also, two co-workers of plaintiff's testified to her good character for honesty, integrity and hard work.

Plaintiff seeks review of the decision of the village manager under the common law writ of *certiorari*. Historically, an interested party who has been aggrieved by a ruling of an administrative body has a right to have the proceeding reviewed by the common law writ of *certiorari*. (*People ex rel. Elmore v. Allman* (1943), 382 Ill. 156, 46 N.E.2d 974.) "[T]he substantial differences that at one time existed between common law and statutory *certiorari* have been all but obliterated." (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 541, 367 N.E.2d 1286, 1293; see *Penrod v. Department of Corrections* (1979), 72 Ill. App. 3d 649, 391 N.E.2d 59.) Under the writ, the trial consists only of a review of the administrative records. The reviewing court must ascertain whether the agency had jurisdiction and acted within its jurisdiction, whether it proceeded according to law and acted on the evidence, and whether there is anything in the record which fairly tends to sustain the action of the agency. *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 884, 324 N.E.2d 65, 70.

Plaintiff first contends that the hearing before the village manager did not protect plaintiff's due process rights under the fourteenth amendment (U.S. Const., amend. XIV). Defendant, however, contends that plaintiff did not have a property interest in the job of civilian radio operator which requires due process of law before she may be dismissed under *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701. In view of our decision that the hearing afforded plaintiff the minimum requirements of due process, we need not consider whether plaintiff had a property interest in her job.

Plaintiff argues that the failure to require an oath or affirmation of the witnesses denied plaintiff due process of law. Plaintiff contends that sworn testimony is inherent to the due process right to confrontation since such testimony is given under pain of perjury. Plaintiff has not shown that the administration of an oath at the administrative hearing below was required by law. "A voluntary oath neither required nor authorized, that is, not provided for by law, cannot constitute perjury." (*People v. Watson* (1980), 85 Ill. App. 3d 649, 652, 406 N.E.2d 1148, 1151; Ill. Rev. Stat. 1981, ch. 38, par. 32—2(a).) Furthermore, plaintiff has not called to our attention any Illinois authority suggesting that the absence of testimony under oath, as in this case, invalidates the hearing and voids the administrative decision. We note

that neither party objected to the failure to administer oaths during the hearing and, hence, we find that this issue has been waived.

Plaintiff also argues that her right to due process was violated because the appearance of witness Barbara Pierce was coerced by a subpoena which was not within the authority of the village manager to issue. A document which proported to be a subpoena was issued by the village manager "pursuant to authority vested by the statutes of the State of Illinois," ordering Barbara Pierce to appear at the hearing on May 29, 1981. She did not appear and the hearing was continued until June 6. On June 1 the village attorney applied for enforcement of the subpoena in the Federal District Court and that court ordered that a Federal subpoena shall not issue. The village then issued a duplicate subpoena to Pierce and she attended the June 6 hearing.

Plaintiff argues that section 32—7 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 32—7) makes it a crime to issue any document which proports to be any civil or criminal process. To establish the invalidity of the subpoena, plaintiff relies upon the refusal of the Federal Court to issue a Federal subpoena to enforce the village's subpoena. Plaintiff is arguing, in effect, that because the issuance of the subpoena is allegedly defective, the entire testimony of Pierce is without force and should be struck from the record. We disagree. We observe from the record that the witness did appear and testified and was subjected to extensive cross-examination. Plaintiff has not cited any authority to support her position that the proceedings should be in any way voided because of the purported defective subpoena. Nor has plaintiff argued or demonstrated that any prejudice resulted therefrom.

■ The trial court found that the minimum requirements of due process were met at the village hearing. Plaintiff was notified of the charges against her. She was represented by an attorney. She had the opportunity to be heard, to present evidence and to confront the witnesses against her. The hearing was held before a fair and impartial tribunal whose rulings were based on the evidence presented. Under the facts of this case, plaintiff was given the minimum requirements of due process of law. *Gigger v. Board of Fire & Police Commissioners* (1959), 23 Ill. App. 2d 433, 163 N.E.2d 541; *Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 379 N.E.2d 859.

Plaintiff next contends that the trial court erred in sustaining the administrative finding that there was cause for discharge. Plaintiff relies upon *Sutton v. Civil Service Com.* (1981), 94 Ill. App. 3d 134, 418

N.E.2d 791, and *Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201, in which the appellate court reversed an administrative agency's finding that there was cause for discharge. In both cases, the court found that the employee's misconduct was not of such severity as to warrant the sanction of discharge.

■ Recently, the supreme court has reversed the *Sutton* decision (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147). In *Sutton,* the court set forth the proper inquiry to be made by a reviewing court in determining whether there was sufficient cause for discharge. The court stated:

> "The question, though, is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. Nor is it whether this court would conclude in view of the mitigating circumstances suggested by Sutton that a different penalty would be more appropriate. The question is whether, in view of the circumstances presented, this court can say that the Civil Service Commission, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service." 91 Ill. 2d 404, 411, 438 N.E.2d 147, 150-51.

Although *Sutton* gave the standard of review appropriate for an action filed pursuant to the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*), this standard may be applied to review of an administrative decision under the common law *certiorari*. In *Penrod v. Department of Corrections* (1979), 72 Ill. App. 3d 649, 391 N.E.2d 59, this court recognized that "there is no longer a viable difference between these two types of proceedings." (72 Ill. App. 3d 649, 651, 391 N.E.2d 59, 61.) Furthermore, the standard of review adopted in *Sutton* is consistent with that traditionally recognized under common law *certiorari* in which a reviewing court would not substitute its judgment for that of the agency unless the agency's decision was arbitrary or unsupported by the evidence. *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65.

A substantial shortcoming which renders an employee's continuance in office "in some way detrimental to the discipline and efficiency of the service" and which "the law and a sound public opinion recognize as a good cause for his not longer occupying the place," constitutes cause for discharge. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 410, 438 N.E.2d 147, 150; *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277.) Plaintiff argues that her alleged indiscretion was not serious, es-

pecially since the information was freely disseminated among police and civilian personnel in the department and the information "never went further" than to two persons outside the department. Plaintiff contends that such an incident is not sufficient to end an otherwise unblemished career of a hardworking and honest employee.

■■ The trial court affirmed the administrative finding of dismissal, stating that "confidentiality of juvenile matters is a serious concern." The village manager could well conclude that retention of an employee in the sensitive position of radio operator who had breached the confidentiality of a juvenile arrest could undermine the good will the police department hopes to maintain in the community. Furthermore, plaintiff is privy to much confidential information, and she testified that she was aware of the requirement of confidentiality. The village manager found that plaintiff's violation of this requirement in the area of juvenile matters was a serious infraction warranting discharge and was good cause for her no longer occupying the position of radio operator. It cannot be said that in so determining the village acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service. *Sutton.*

■■ Plaintiff next contends that the information she allegedly revealed was neither confidential nor learned in the course of her duties. Plaintiff asks us to find that since the information about the arrest and the boy's quip was freely discussed amongst police personnel in the bar, it was no longer secret and, that since plaintiff learned the story from her supervisor during a shift change, it was not learned in the performance of her duties. We find both these arguments to be without merit. The village manager found that Pierce learned the information directly from plaintiff and not from overhearing the conversation of the police officers. Moreover, the fact that the police officers discussed the incident among themselves does not diminish the confidential nature of the information. Information learned in the course of duties certainly includes information given to plaintiff while she was at the police station during her shift change.

■■ Lastly, plaintiff contends that Pierce's testimony is unworthy of belief and is against the manifest weight of the evidence. Courts of review, however, may not "reweigh the evidence, but are limited to a determination whether the final decision of the administrative agency is just and reasonable in light of the evidence presented." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, 714; *Penrod.*) The village manager determined that the testimony of Pierce was more credible than the testimony of plaintiff. Pierce's reluctance to testify does not suggest that her testimony was not credible espe-

cially since Pierce stated that she did not want to "hurt anybody" and that she realized that plaintiff had not revealed the information maliciously. We find that the decision of the village manager is amply supported by the record.

Accordingly, for the reasons stated herein, the decision of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG AND O'CONNOR, JJ., concur.