EARL L. SHELDON, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (2nd Division)   No. 84—1155

Opinion filed February 26, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Thomas P. Marnell, Assistant Attorney General, of Chicago, of counsel), for appellant.

George E. Downs, of Palatine, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Earl L. Sheldon, filed an action in the circuit court of Cook County for administrative review of the decision of defendant, Jim Edgar, Secretary of State for Illinois (Secretary), denying his petition for reinstatement of driving privileges. The circuit court reversed, finding the Secretary's determination to be against the manifest weight of the evidence. On review, the Secretary maintains that the entry of this reversal order was erroneous. We agree.

The record shows that on May 18, 1978, plaintiff was convicted for the third time of driving while under the influence of an intoxicating liquor. (Ill. Rev. Stat. 1977, ch. 95½, par. 11—501(a).) His first conviction occurred in October of 1973; his second conviction occurred in November of 1975. Following plaintiff's third conviction, his license was revoked pursuant to section 6—205(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—205(a)(2)).

On March 7, 1980, plaintiff was issued a restricted driving permit for a period of one year. Plaintiff's application for reissuance of this permit was denied by the Secretary on December 15, 1981. Thereafter, plaintiff filed a petition for administrative review of the Secretary's refusal to reissue the restricted driving permit. Following a hearing held on March 11, 1982, the circuit court reversed the Secretary's decision and remanded the cause for a reevaluation of plaintiff's application for reinstatement of his driving privileges.

Pursuant to the court's mandate, a formal hearing was held before the Secretary on April 12, 1982. During this hearing, plaintiff was asked to submit to an alcohol evaluation, as well as to enroll in an alcohol-related driver remedial course. Plaintiff's initial response to this request was, "I would, if I could get there, but I have no way of getting there." Plaintiff later admitted, however, that he eventually refused to comply with the Secretary's request. As a result, on July 13, 1982, the Secretary denied plaintiff's application for reinstatement

of his driving privileges.

On August 10, 1982, plaintiff filed a second petition for administrative review. Following a hearing held on March 3, 1984, the circuit court again reversed the Secretary's determination and remanded the cause for purposes of reinstating plaintiff's driving privileges. It is the propriety of this reversal order which the Secretary now contests on appeal.

I

■ The initial question for resolution is whether the circuit court erred in ruling that the Secretary's refusal to reinstate plaintiff's driving privileges was against the manifest weight of the evidence.

Section 3—110 of the Administrative Review Law provides, in pertinent part, that "the findings and conclusions of the administrative agency on questions of fact are to be considered *prima facie* true and correct." (Ill. Rev. Stat. 1981, ch. 110, par. 3—110.) "This statute has been construed to mean that courts may not interfere with the discretionary authority vested in administrative bodies unless that authority is exercised in an arbitrary or capricious manner [citation] or the administrative decision is against the manifest weight of the evidence [citations]." (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085.) Consequently, a court of review is not to reweigh the evidence or make an independent determination of the facts; rather, our sole function here is to ascertain whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. *Odell v. Village of Hoffman Estates* (1982), 110 Ill. App. 3d 974, 980, 443 N.E.2d 247; *Nendza v. Board of Review* (1982), 105 Ill. App. 3d 437, 442-43, 434 N.E.2d 470.

The key inquiry in the case at bar turns on whether the Secretary's denial of plaintiff's petition for reinstatement of his driving privileges was just and reasonable in light of the requested objective evidence that was *not* presented by plaintiff prior to such denial.

The evidence submitted by plaintiff at the April 1982 hearing was substantially the same as that submitted by him at the October 1981 hearing. It consisted of his own testimony that the last time he drank an alcoholic beverage was in September of 1977;[1] that he had joined Alcoholics Anonymous in March of 1978, but dropped out in October of 1979 because the meetings depressed him; that he was gainfully

---

[1] Both of plaintiff's petitions for administrative review state, in contradiction, "[t]hat subsequent to June 27, 1978, the Petitioner ceased and desisted from drinking any sort of intoxicating liquors."

employed as a bartender and handyman at a local club; and that during the one-year period in which he was allowed to operate a motor vehicle under a restricted driving permit, he did not have any traffic violations. Moreover, several of plaintiff's friends submitted letters stating that, in their opinion, he has maintained a condition of sobriety and, in fact, no longer drinks alcoholic beverages.

The evidence introduced by the Secretary at the hearing consisted of plaintiff's driving record which indicated that he had been convicted of driving while under the influence three times in a five-year period. The first conviction occurred on October 16, 1973; the second conviction occurred on November 13, 1975; and the third conviction occurred on May 18, 1978. Other than his attendance at Alcoholics Anonymous and his hospitalization for approximately one month at some point subsequent to his first driving while under the influence conviction, plaintiff conceded that he had never received any formal or informal treatment or counseling for alcohol abuse.

The secretary, through his hearing officer, requested that plaintiff submit to an alcohol evaluation and enroll in an alcohol-related driver remedial course pursuant to the prevailing policy. (See Secretary's Procedures and Standards sec. III(B)(1) (1981), eff. Jan. 1, 1982.) Plaintiff initially assented, indicating only an unavailability of transportation; however, as he admitted in his second petition for administrative review, he thereafter refused to comply with the hearing officer's request. As a result, the Secretary entered an order on July 13, 1982, denying plaintiff's application for reinstatement of his driving privileges. Plaintiff now asserts that since he drove on a restricted permit for one year without any traffic violations, he should at least be entitled to a renewal of said permit.[2]

The Illinois Vehicle Code, which grants the Secretary the authority to either reinstate driving privileges or to issue restricted driving permits (see Ill. Rev. Stat. 1981, ch. 95½, pars. 6—206, 6—208), has been construed by our supreme court to make "it clear that, once driving privileges are revoked, the restoration of such privileges is not automatic." (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, citing *People v. Turner* (1976), 64 Ill. 2d 183, 186, 354 N.E.2d 897.) Rather, it is up to the Secretary, "after investigation," to make the determination "that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." Ill. Rev.

---

[2]We note that the Secretary's policy requiring an alcohol evaluation as well as enrollment in an alcohol-related driver remedial course was not in force when plaintiff was issued his restricted driving permit in March of 1980.

Stat. 1981, ch. 95½, par. 6—208(b).

Regarding the present case, it is clear that the Secretary properly exercised his discretionary authority, particularly in view of plaintiff's obstinate refusal to comply with the hearing officer's request. The record of the April 1982 hearing is totally devoid of any professional assurances that plaintiff could fully appreciate the vital need to avoid drinking intoxicating beverages prior to, or during, his operation of an automobile. The necessity of a professional opinion that plaintiff has recognized and, more importantly, controlled his drinking problem was obvious where, in his own words, he "went off the deep end \*\*\* [and] couldn't handle it."

Plaintiff's record of three convictions within five years for driving while under the influence evinces an utter disregard for the lives of pedestrians, other motorists and his own life as well. To routinely allow plaintiff a fourth opportunity to get behind the wheel of a car would, in essence, eviscerate "the Secretary's duty to *insure* the public safety and welfare \*\*\*." (Emphasis added.) (*Murdy v. Edgar* (1983), 117 Ill. App. 3d 1091, 1097, 454 N.E.2d 819, *aff'd* (1984), 103 Ill. 2d 384.) This holds especially true where that fourth chance, if the Secretary had allowed it here, would be predicated solely on: (1) self-serving claims of sobriety and promises to refrain from alcohol consumption; (2) gainful employment; (3) driving under a restricted permit without a traffic violation; and (4) letters from friends. Speculation and uncertainty should be reduced to a minimum. In our estimation, an alcohol evaluation and successful completion of a driver remedial course would provide the Secretary with objective evidence of the purported improvement in plaintiff's condition. It would benefit both the plaintiff and the general public because, together, they are exposed to the same risk of harm from motorists who are not qualified to drive on our highways.

Deaths and injuries attributable to driving while under the influence have reached epidemic proportions.[3] Stricter licensing and enforcement laws and procedures have become a trend throughout the country to reduce and control this highway carnage. Keeping with the times, the Secretary adopted a policy which later became a regulation requiring an alcohol evaluation and enrollment in an alcohol-related driver remedial course in certain cases. (See 92 Ill. Admin. Code, ch. II, sec. 1001.440 (1984).) Applicants for driving privileges have, for

---

[3]"[D]runken-driver killers are more numerous than previously suspected. Governor Thompson says, '60 to 70 percent' of the dead drivers in Illinois who were tested for alcohol had been drinking." Chicago Sun-Times, January 11, 1984 at 41.

years, routinely submitted to objective testing in order to detect visual and other physical disorders. (See Ill. Rev. Stat. 1983, ch. 95½, par. 506—1 *et seq.*) Thus, in our view, the alcohol evaluation and driver remedial course combine to form an objective test which the Secretary can impose in order to properly serve the public interest and meet the problems of our time. Although this test may seem a bit harsh to those involved, "even the appearance of harshness tends to fade when compared to laws now existent in many countries where the convicted driver's loss of freedom by immediate incarceration is more drastic than in this country as opposed to the relatively minor deprivation of not being able to drive a motor vehicle legally." *Doe v. Edgar* (7th Cir. 1983), 721 F.2d 619, 623.

Very simply, the Secretary requested plaintiff's cooperation in the endeavor to help him both recognize and rectify his past irresponsible, life-threatening behavior. The inconvenience suffered by plaintiff would be minimal, while the benefit to the public would be enormous. Further, we believe that if plaintiff was truly serious about demonstrating reform in his past driving behavior, he would have cooperated with the request of the hearing officer.

"In short, if there is anything in the record which fairly supports the action of the agency, the decision is not against the manifest weight of the evidence and must be sustained on judicial review." (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 654, 456 N.E.2d 998.) Here, what is clear from the record is plaintiff's refusal to cooperate with the Secretary prior to the July 1982 denial of his petition for reinstatement of driving privileges. Such obstinacy is certainly not indicative of reform in plaintiff's repeated disregard for the lives of other people as well as his own. We conclude that plaintiff was correctly given the option of: (1) not driving; or (2) presenting the Secretary with the requested objective evidence that would be a step toward removing a stigma that plaintiff, alone, created.

The Secretary's July 1982 finding that plaintiff would endanger the public safety and welfare was not, in our opinion, against the manifest weight of the evidence. Therefore, the circuit court's reversal of this finding was erroneous.

## II

■ It is plaintiff's contention that the promulgation of the Secretary's "Provisions for Alcohol and Drug Related Revocations and Suspension" (92 Ill. Admin. Code, ch. II, sec. 1001.440 (1984)) unconstitutionally transcends the scope of authority granted to the Secretary by section 2—104 of the Illinois Vehicle Code. (Ill. Rev. Stat. 1981,

ch. 95½, par. 2—104.) Alternatively, plaintiff argues that section 2—104 is unconstitutional in application. The threshold issue for resolution, however, is whether these constitutional questions have been properly preserved for review. We find that they were not.

"It is a well settled principle of judicial restraint that constitutional questions not presented to the trial court may not be raised for the first time on appeal." (*In re Adoption of McFadyen* (1982), 108 Ill. App. 3d 329, 338, 438 N.E.2d 1362, *cert. denied* (1983), 460 U.S. 1015, 75 L. Ed. 2d 486, 103 S. Ct. 1259; see also *Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387, 456 N.E.2d 640.) A thorough examination of the record reveals that the constitutional issue as to both section 1001.440 and the internal policy statement that preceded its codification was neither raised in, nor ruled upon by, the circuit court during any stage of the proceedings below. The same holds true for plaintiff's alternative challenge regarding the constitutionality of section 2—104 of the Illinois Vehicle Code. In addition, no reason has been advanced as to why plaintiff failed to argue these issues at the trial level. We thus consider plaintiff's constitutional claims as having been waived for purposes of appellate review.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

PERLIN and HARTMAN, JJ., concur.