MIKEL L. SUTTON, Plaintiff-Appellant, v. JIM EDGAR, Secretary of State, Defendant-Appellee.

Fourth District   Nos. 4—85—0791, 4—85—0853 cons.

Opinion filed September 19, 1986.

724

Mark T. Petty, of Arcola, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

In separate administrative review actions, plaintiff Mikel L. Sutton appealed the November 5, 1984, and July 1, 1985, Secretary of State denials of his requests for reinstatement of driving privileges. In orders entered October 29, 1985, and November 5, 1985, the circuit court denied the relief sought. Following the filing of notices of appeal with regard to both of these orders (October 29, 1985, order—cause No. 4—85—0791; November 5, 1985, order—cause No. 4—85—0853), we consolidated the causes for purpose of review in this court.

Sutton's driving privileges were suspended from June 1979 through August 1979, and his driving privileges were revoked effective September 3, 1980. Furthermore, Sutton received a suspension of driving privileges from July 1981 through October 1981 as a result of his refusal to take a breathalyzer test following his January 1981 arrest for drunk driving, which resulted in his May 1981 conviction of that offense, and his driving privileges were again revoked effective December 18, 1981.

Sutton filed a request for a restricted driving permit in 1982 and a request for reinstatement for full driving privileges or, in the alternative, a restricted driving permit in 1983. Both of these requests were denied.

On July 20, 1984, Sutton again requested reinstatement of full driving privileges, or, alternatively a restricted driving permit. A hearing was held on this request on September 19, 1984. Following that hearing, the Secretary, on November 5, 1984, denied Sutton's request for a restricted driving permit, but did not specifically rule upon his request for reinstatement of full driving privileges. Sutton subsequently filed still another request for reinstatement of full driving privileges or, in the alternative, a restricted driving permit, and a hearing on that request was held on June 7, 1985. At the June 7, 1985, hearing, the Secretary considered a request for exactly the

same relief which Sutton requested on July 20, 1984. Sutton was afforded an opportunity at the July 7, 1985, hearing to present, if he so desired, the same evidence in support of his request for reinstatement of full driving privileges as he presented at the September 20, 1984, hearing. The Secretary did explicitly rule upon his request for full reinstatement following the 1985 hearing. We therefore hold that the Secretary's failure, in 1984, to specifically rule on Sutton's request for reinstatement of full driving privileges does not in itself require remandment of this cause to the Secretary for further consideration of Sutton's request for reinstatement of full driving privileges.

■ Furthermore, because we decide in this opinion that the Secretary's 1985 denial of Sutton's request for a restricted driving permit was erroneous, a decision favorable to Sutton with respect to his 1984 request for a restricted driving permit would confer upon him no greater rights than our decision with respect to the denial of his 1985 request. Therefore, the question of the propriety of the Secretary's 1984 decision denying Sutton a restricted driving permit is moot (see *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 437 N.E.2d 638), and we need only consider the correctness of the Secretary's July 1, 1985, denial of Sutton's request for a reinstatement of driving privileges.

At the June 7, 1985, hearing on his 1985 request for reinstatement of driving privileges, Sutton, on examination by the Secretary's counsel, did not dispute that he committed any of the traffic offenses appearing in his driving record. He stated that at the time of his first arrest for drunk driving, he had consumed four to five beers, and had consumed the same amount of alcohol at the time of his second arrest for drunk driving.

On examination by his attorney, Sutton testified that at the time of the hearing, June 7, 1985, he was employed as a brake assembler for Pullman Trailmobile in Charleston. He has worked there for about 14 months, and the firm is located 22 miles from his home. Sutton's job performance at Trailmobile is above average, and he goes to work on time every day. He has been promoted from production helper to assembler during the time he has been with Trailmobile. Sutton believes that his job with Trailmobile is permanent, and that he has further opportunity for promotion.

Sutton was in the Navy from 1974 to 1978, having enlisted when he was 17, and began to use alcohol while in the service. None of the traffic offenses for which he had been arrested in any way resulted in damage to persons or property or near misses with other

vehicles. Sutton has not driven after having consumed alcohol since his 1981 arrest for drunk driving.

Sutton testified that he consumed alcohol for the last time in the spring of 1984. This consisted of drinking one beer when some friend and relatives that he and his mother had not seen for quite a few years visited them. Sutton stated that he quit using alcohol because he "can't afford the trouble that it causes."

On examination by the Secretary's counsel, Sutton stated that he is not now attending any self-help group such as Alcoholics Anonymous. Since he has been employed with Trailmobile, he has never missed a day's work because of inability to get to his job. Also, Sutton denied a statement that he had consumed alcohol in August 1983, which appeared in an alcohol evaluation report prepared by the Prairie Center for Substance Abuse, dated June 6, 1985, which was introduced into evidence. Sutton had no explanation for the discrepancy between this statement and his testimony that he stopped drinking (with the exception of one beer in 1984) in April 1983.

Also on examination by the Secretary's counsel, Sutton was queried concerning a statement appearing in the above-mentioned alcohol-usage evaluation that his mother had told the evaluator that Sutton had cut down his drinking to almost nothing during the latter part of 1983. Sutton responded that his mother may have made that statement because he had not told her that he had stopped drinking at the time that the alcohol counselor questioned her. Finally, Sutton stated that he decided to enter the Hour House program because "it was my second DUI, there was a possibility of a jail sentence, and I thought it over and thought it was a good idea to go down there and get straightened out."

The June 6, 1986, alcohol evaluation which Sutton introduced into evidence, states, in the "Conclusions" section thereof:

"[Sutton is a] person who used and abused alcohol through his youth. He was in treatment at Charleston, IL after having been given a 30 day leave of absence by this [sic] employer. He was in the Detoxification Unit for 6 days and in residential treatment for 28 days. Consequently he lost his job for being gone for over the 30 day leave of absence limit. He attended and completed an alcohol/drug Education Course at the PRAIRIE CENTER FOR SUBSTANCE ABUSE. The client first cut his drinking by [sic] to a social level, I believe controlled drinking, and then *decided to and is abstaining*. He plans to enter college under the VA bill. The Sheriff and the States Attorney, who in a small county are apt to be informed, attest to

his behavioral pattern which does not include running around with a drinking crowd or being in bars drinking. They may be unaware of whether he drinks at home but the testimony as to his behavior within the county is irrefutable.

His alcohol abuse was caused by attitudes, self image and immaturity. *He needs no further intervention, education or alcohol treatment. I know of no mental, physical or psychological impairments which would cause him to be an unsafe operator of a vehicle.*" (Emphasis added.)

Also, Sutton introduced into evidence a letter from the Douglas County State's Attorney dated October 7, 1983 (which he had also introduced at the hearing on his 1984 request for reinstatement of driving privileges), and a letter from the Douglas County sheriff, dated May 24, 1985, both of which generally state that Sutton has successfully rehabilitated himself and recommend that he be issued at least a restricted driving permit. The evidence also shows a letter from the personnel manager of Trailmobile, dated May 23, 1985, which indicates that Sutton has maintained above-average work performance and is required to be prompt and at work each working day. Sutton would not be "excused off due to reasons as the result of not having a valid driver's license." One of the causes for termination listed in Trailmobile's union contract is failure to show up for work for three consecutive days.

Hearing officer William Stanley White arrived at the following conclusions of law: (1) Sutton has abused alcohol *in the past* and his drinking habits have caused specific and identifiable problems; (2) *because of conflicting statements* as to when Sutton stopped drinking and consequent uncertainty as to when he ceased alcohol use, Sutton failed to provide evidence sufficient to carry his burden of establishing that his alcohol problem had been resolved; (3) Sutton *"did not demonstrate an undue hardship as he is presently driving himself to and from work"*; (4) Sutton failed to establish that he would be a safe and responsible driver and would not endanger the public; (5) because of his multiple driving-while-intoxicated convictions, Sutton's request for full reinstatement of driving privileges could not be considered until at least December 18, 1986, pursuant to section 1001.440(f) of chapter II of the Illinois Administrative Code (92 Ill. Admin. Code, ch. II, sec. 1001.440(f) (1984)); and (6) Sutton *"presently violates the Illinois Motor Vehicle Code on a regular basis by driving a motor vehicle to and from work."* In an order entered July 1, 1985, the Secretary adopted the hearing officer's findings of fact and conclusions of law and denied Sutton's request for reinstatement

of full driving privileges or, alternatively, a restricted driving permit.

As grounds for reversal of the circuit court's affirmance of the Secretary's 1985 order, Sutton contends that (1) the Secretary's denial of his request for reinstatement of full driving privileges was based on the erroneous assumption that he was precluded from obtaining full reinstatement of his driving privileges until the expiration of five years from the date of his last conviction for driving under the influence of alcohol; (2) the Secretary erred in placing upon Sutton the burden of proving that he is entitled to reinstatement of his driving privileges; (3) the Secretary erroneously utilized the "clear and convincing evidence" standard of proof in evaluating the evidence presented in support of Sutton's petition for reinstatement of driving privileges; and (4) the decision is contrary to the manifest weight of the evidence.

Sutton contends that the administrative rule promulgated by the Secretary relevant to the petitioner's burden of proof and the clear and convincing standard of proof at administrative hearings, should be declared invalid (92 Ill. Admin. Code, ch. II, sec. 1001.100(8) (1984)).

With respect to the burden of going forward with evidence at hearings on requests for reinstatement of driving privileges, Sutton argues that the Secretary should have the burden of producing evidence that the petitioner is not entitled to reinstatement of his or her driving privileges. In support of· this position, Sutton cites the following statutory provision:

> "Upon any such [administrative] hearing, the Secretary of State *** shall either rescind or, good cause appearing therefor, continue, change or extend the Order of Revocation or Suspension, as the case may be." (Ill. Rev. Stat. 1983, ch. 95½, par. 2—118(c).)

It is, however, manifest that this provision was intended merely to detail the actions which the Secretary may take at the conclusion of an administrative hearing. It says nothing concerning who has the burden of going forward with the proof at such hearings.

■ Generally, " 'courts have uniformly imposed on administrative agencies the customary common-law rule that the moving party has the burden of proof.' [Citations.]" (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 53, 416 N.E.2d 1082, 1088.) In the present case, Sutton, who had requested restoration of driving privileges, was the moving party in both of the administrative hearings which preceded the decisions which he appeals. For this reason, the Secretary did not err in imposing upon Sutton

the burden of going forward with clear and convincing evidence that he is entitled to restoration of his driving privileges.

▪ Furthermore, we do not feel that the Secretary has, by regulation, improperly imposed upon persons seeking restoration of driving privileges the burden of proving by clear and convincing evidence that they are entitled to reinstatement of driving privileges. A review of the relevant authorities leads to the conclusion that the primary determinant of the standard of proof applicable to an administrative proceeding is the interest which will be affected by the administrative decision, viewed in light of competing societal interests, rather than the conduct which forms the basis for the administrative action contemplated or requested. (See generally *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173.) Where an individual's property interests are substantially outweighed by competing societal interests, a relatively low standard of proof may be utilized in administrative proceedings which may result in an individual's deprivation of such property interests. (See *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) The revocation of licenses in general and driver's licenses in particular has generally been held to implicate property rather than liberty interest. (See *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) In our view, the public interest in curbing the epidemic number of deaths and injuries attributable to drunk driving (see *Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 475 N.E.2d 956) through keeping unsafe drivers off of our streets, roads, and highways outweighs the interests of convicted drunk drivers in regaining their property rights of being able to operate motor vehicles on such thoroughfares. We therefore conclude that where, as here, an individual seeks *restoration* of his property interest in his driving privileges, which interest is of lesser magnitude than the interest of society in insuring that only safe drivers operate motor vehicles on the public thoroughfares, that individual must establish his or her entitlement to restoration of driving privileges by clear and convincing evidence.

▪ We next consider whether Sutton established by clear and convincing evidence that he is entitled to reinstatement of full driving privileges or, alternatively, a restricted driving permit. The 1985 denial of Sutton's request for reinstatement of full driving privileges was based at least in part on a regulation promulgated by the Secretary which prohibited the restoration of full driving privileges to those having multiple driving while intoxicated convictions for a per-

iod of five years following the last such conviction. (92 Ill. Admin. Code, ch. II, sec. 1001.440(f)(1984).) In *Franz v. Edgar* (1985), 133 Ill. App. 3d 513, 478 N.E.2d 1165, we held that this regulation is invalid.

The findings and conclusions of the administrative agency on questions of fact are considered to be *prima facie* true and correct on judicial review. (*Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929; *Breiner v. Edgar* (1985), 130 Ill. App. 3d 1010, 474 N.E.2d 1373; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 469 N.E.2d 1085.) The factors relative to whether a restricted driving permit should be granted are the degree of hardship which deprivation of driving privileges imposes on the applicant, whether alternative means of transportation are reasonably available, and whether issuance of such a permit would prove to be a danger to the public safety and welfare. (Ill. Rev. Stat. 1983, ch. 95½, par. 6—206(c)(3).) It should be noted that prior to January 1, 1984, section 6—206(c)(3) did not provide that the petitioner specifically demonstrate that being granted a restricted driving permit would not endanger the public safety of welfare. This specific requirement is still not shown to be required under the provisions of section 6—205(c), the only requirement being that the issuance be limited to cases where undue hardship would result from a failure to issue such a restricted driving permit. Regardless of the statute's specific reference to endangering the public safety or welfare, the Secretary of State has the prerogative to promulgate regulations designed to ensure against granting driving privileges to persons who would in fact endanger public safety or welfare.

At the June 7, 1985, hearing, the testimony did not show any excessive use of alcohol by Sutton since 1983; upon examination by a professional alcoholism counselor, it was found that Sutton is abstaining from the use of alcoholic beverages and that the State's Attorney and sheriff of the particular county attested to his behavioral pattern, stating that they (the sheriff and State's Attorney) may be unaware of whether the petitioner drinks at home but the evidence as to behavior within the county is irrefutable; and that "he [Sutton] needs no further intervention, education or alcohol treatment. I know of no mental, physical or psychological impairments which would cause him to be an unsafe operator of a vehicle." Sutton lives 22 miles from his place of employment and no public transportation, family transportation, or car pools are available. It was thus clearly shown that there were no alternative means of transportation reasonably available. The proof is also sufficient to show the petitioner

will not endanger the public safety or welfare by being issued a restricted driving permit.

■ Additionally, it is noted that the Secretary's hearing officer in his conclusions prior to recommending denial of the driving privilege found that the plaintiff was presently driving to and from work. The Secretary's adoption of this conclusion is ridiculous. It is a clear violation of the law for the plaintiff to drive without a license. The hearing officer's conclusion appears to give the Secretary's tacit approval to the plaintiff's driving.

The Secretary's reliance upon *Cusack v. Edgar* (1984), 137 Ill. App. 3d 505, 484 N.E.2d 1145, and *Foege v. Edgar* (1982), 110 Ill. App. 3d 190, 441 N.E.2d 1267, is not helpful in deciding the instant case. In *Cusack*, unlike in the instant case, there was substantial evidence which impeached the alcoholism counselor's conclusion that the plaintiff had overcome his drinking problem. In *Foege*, there was no positive evidence that the plaintiff had overcome his drinking problem comparable to that presented in the case at bar.

The Secretary's denial of Sutton's request for the restricted driving permit was contrary to the manifest weight of the evidence.

■ With respect to the Secretary's denial of full driving privileges to Sutton, we find the plaintiff has not sustained his burden of proof by clear and convincing evidence, and that the Secretary's decision is therefore not against the manifest weight of the evidence. The plaintiff did not adequately establish that he would be a safe and responsible driver if unlimited driving privileges were granted. Nor was there clear and convincing proof concerning his abstinence from alcohol during nonworking periods or while going to and from work. Moreover, the plaintiff's evidence and argument were directed more to the application for a restricted driving permit. Certainly the plaintiff will again have the opportunity to apply for full driving privileges. The Secretary's invalid five-year rule will not hamper a new application and the plaintiff will have the opportunity to clearly prove his nonuse of alcohol as required by the Secretary's regulations.

■ Finally, Sutton requests that he be awarded attorney fees by virtue of the Secretary's basing his July 1, 1985, denial of his request for restoration of full driving privileges on the administrative rule which prohibited restoration of full driving privileges to individuals having multiple drunk driving convictions until after the passage of five years from the date of the most recent conviction (92 Ill. Admin. Code, ch. II, sec. 1001.440(f) (1984)), which we held invalid in *Franz*. Sutton premises his claim for attorney fees on section 14.1

of the Illinois Administrative Procedure Act which provides:

"(b) In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority or the agency's failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." Ill. Rev. Stat. 1983, ch. 127, par. 1014.1(b).

Statutes in derogation of the common law prohibition of attorney-fees awards to prevailing parties must be strictly construed. (*Navarro v. Edgar* (1986), 145 Ill. App. 3d 413; *Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647, 411 N.E.2d 1173.) It is apparent that subsection (f) of section 1001.440 of the Illinois Administrative Code (92 Ill. Admin. Code, ch. II, sec. 1001.440(f) (1984)) was declared invalid in *Franz*, and not in the present litigation. *Ergo*, this cause is not an action in which section 14.1 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1983, ch. 127, par. 1014.1) authorizes an award of attorney fees.

To summarize, the issue of the correctness of the circuit court's decision affirming the Secretary's order of November 5, 1984, which denied Sutton's request for a restricted driving permit, is moot, and we therefore dismiss that cause. We affirm the circuit court's order affirming the Secretary's order of July 1, 1985, as it pertains to plaintiff's application for reinstatement of full driving privileges, reverse the circuit court's order affirming that order as it pertains to plaintiff's application for a restricted driving permit, and remand that cause to the Secretary with directions to issue Sutton a restricted driving permit containing such conditions as the Secretary deems proper. Finally, we hold that Sutton is not entitled to an award of attorney fees.

Cause No. 4—85—0791 dismissed; cause No. 4—85—0853 affirmed in part, reversed in part, and remanded with directions.

WEBBER and MORTHLAND, JJ., concur.