THIRD DIVISION 

July 26, 2000

No. 1-99-3757

LAZARO SANCHEZ, 

Petitioner-Appellant,

v.

GEORGE RYAN, Secretary of State,

Respondent-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 98 CH 16941

Honorable

Thomas A. Hett,

Judge Presiding.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Petitioner appeals an order affirming the Secretary of State's denial of his third petition for reinstatement of driving privileges or, in the alternative, a restricted driving permit (RDP).  We affirm.   Petitioner was arrested for driving under the influence of alcohol (DUI) on April 9, 1993.  The record shows his blood-alcohol content (BAC) on arrest was .23.  Petitioner pleaded guilty and his driver's license was suspended for three months.  625 ILCS 5/11-501 (West 1996).  Petitioner was again arrested for DUI on August 14, 1995.  A breathalyzer test revealed a .22 BAC.  Notice of suspension for the second conviction was issued on September 12, 1995, under section 11-

501 of the Illinois Vehicle Code (the Code) (625 ILCS 5/11-501 (West 1996)).  Petitioner was convicted of DUI on October 16, 1995.  Orders suspending and revoking petitioner's driving privileges were then entered on January 17, 1996, under sections 7-304 and 6-205(a)(2) of the Code (625 ILCS 5/7-304, 6-205(a)(2) (West 1996)).

Petitioner was evaluated on September 11, 1995.  He  took the Mortimer-Filkins test and scored a 45, indicating petitioner was a presumptive problem drinker.  The Mortimer-Filkins test is a detection tool used to identify alcoholism or an alcohol problem.  Petitioner completed 10 hours of remedial alcohol and drug education on February 20, 1996.  Petitioner also completed 20 hours of group and outpatient counseling on March 8, 1996.  He completed a recommended 10 hours of aftercare treatment on January 30, 1997.  Petitioner was classified as a Level II-Significant Risk on admission into treatment.  He was classified at the same level on discharge.

Petitioner's first petition for reinstatement or an RDP was heard on June 18, 1996.  The petition was denied on July 11, 1996.  Petitioner's testimony was deemed "unconvincing and in direct conflict with the documentary evidence presented."  A second petition was heard on January 31, 1997.  This petition was also denied based on petitioner's unpersuasive testimony.

Petitioner filed a third petition for reinstatement or an RDP on May 12, 1998.  A hearing was held on September 9, 1998, at which the following evidence was presented. 

Petitioner testified that he drank 12 beers in six to eight hours on August 14, 1995, when he was arrested for driving under the influence.  Petitioner testified that he also drank 12 beers in eight hours when he received his first DUI conviction on April 9, 1993.  Petitioner said he was 20 years old at the time of his first arrest.  

Petitioner said that before his first arrest, he drank two beers every two weeks and up to five beers on at least three occasions.  Petitioner said he stopped drinking "for no reason" in January 1995.  He did not drink again until August 14, 1995, when he drank "one beer to cool down."  He was later arrested for driving under the influence.  Petitioner said he had not consumed alcohol since his second arrest and conviction.  Petitioner admitted feeling intoxicated before his two arrests, but he claimed that he still felt able to drive.  Petitioner denied experiencing hangovers or headaches after drinking.  He also denied experiencing withdrawal symptoms during his abstinence from alcohol.  

Petitioner denied his alcohol tolerance was due to years of "practice drinking."  Petitioner explained he inherited a high tolerance for alcohol from his paternal grandfather and uncle.   He denied that problems at home or work caused him to drink.  Petitioner said that his inherited tolerance explained why he could drink large amounts of alcohol and still feel he was able to drive.  But petitioner admitted he would feel lightheaded after drinking five beers.  

Alan R. Gill testified that he counseled petitioner for about 40 hours.  Gill is a state-licensed provider of DUI assessment and treatment services.  He is also a state-licensed clinical social worker.  Gill admitted a discrepancy between petitioner's claimed use of alcohol and the BACs from his two DUI arrests.  Gill explained that this could be from genetic predisposition or from years of "practice drinking."  Gill dismissed "practice drinking" because petitioner did not suffer hangovers and he believed petitioner's claim of only moderate drinking.  He concluded that petitioner's family history (a paternal grandfather and uncle) suggested that petitioner was genetically disposed to have a higher tolerance for alcohol.  Gill then referred to a series of articles that discussed genetic disposition to tolerance.  These materials were submitted as exhibits and made part of the record.  Gill's discharge summary indicated that petitioner was straightforward and cooperative during treatment and admitted abusing alcohol to "cope with life stressors."

Gill also testified that he reevaluated petitioner on September 8, 1998, in preparation for the hearing.  Gill said that petitioner's Mortimer-Filkins score was 38, indicating a social drinker.  Gill said that petitioner was not an alcoholic and did not show withdrawal symptoms during his abstinence from alcohol.  Gill said he did not believe petitioner would ever drink and drive again.

Petitioner's mother, Catalina Sanchez, testified last.  Catalina confirmed petitioner's abstinence from alcohol since August 1995.  She also testified that her father-in-law and husband's brother drank "quite a bit" 35 years ago while working on a Mexican ranch.  Catalina denied that petitioner drank a lot before his DUI arrests.

The hearing officer considered the testimony and exhibits submitted.  The hearing officer accepted that it was possible to inherit a predisposition for high tolerance to alcohol but found that petitioner failed to establish that he had this genetic predisposition.  The hearing officer noted that the only evidence supporting the genetic predisposition theory was petitioner's claim that his paternal grandfather and uncle drank heavily more than 35 years ago.  Petitioner admitted that his own father and mother did not drink.  

The hearing officer also found petitioner's testimony about his drinking habits to be inconsistent with his BAC levels at the time of arrest, suggesting minimization or denial of an unresolved alcohol problem.  The hearing officer found Gill's testimony inconsistent and unreliable.  He then recommend that the petition for reinstatement or an RDP be denied. 

The trial court affirmed the Secretary of State's decision and found that the order was not arbitrary or against the manifest weight of the evidence and was based largely on the credibility of witnesses.  

Petitioner raises five issues on appeal: whether (1) his sobriety and other evidence require reinstatement of his driving privileges; (2) defendant's use of official notice to prove petitioner's tolerance violated petitioner's right to due process; (3) defendant used expert testimony improperly; (4) the ruling was arbitrary and capricious; and (5) the ruling was against the manifest weight of the evidence.

An administrative agency's factual findings and conclusions are
 prima facie
 correct.  735 ILCS 5/3-110 (West 1996).  We will not disturb the factual findings and conclusions of an administrative agency unless they are against the manifest weight of the evidence.  
Robbins v. Board of Trustees of the Carbondale Police Pension Fund
, 177 Ill. 2d 533, 538, 687 N.E.2d 39 (1997).  A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident.  
Robbins
, 177 Ill. 2d at 538.  We do not believe the opposite conclusion, that petitioner is entitled to reinstatement or an RDP, is clearly evident under this record.

To be entitled to reinstatement where the loss of driving privileges is alcohol related, a petitioner must prove, by clear and convincing evidence, that he does not have a current problem with alcohol, he is a low or minimal risk to repeat past abusive behavior and operate a motor vehicle while under the influence of alcohol, he has complied with all other standards as specified in the regulations, and the granting of driving privileges will not endanger public safety or welfare.  92 Ill. Adm. Code §§1001.440(b), 1001.420(e), 1001.430(c) (1991); 
Grams v. Ryon
, 263 Ill. App. 3d 390, 396 (1994).   Petitioner first argues that he met all the qualifications for reinstatement.  Petitioner was required to and did complete the remedial drug and alcohol education, the required counseling and the aftercare as required of a Level II-Significant Risk classification.  Petitioner received favorable evaluations from this treatment.  Petitioner also stresses his voluntary abstinence from alcohol since August 1995 and an improbability that he would drive in the future while under the influence.  Petitioner concludes that this evidence shows he is not a danger to the public and entitles him to reinstatement or an RDP.  Petitioner claims that 
Murdy v. Edgar
, 103 Ill. 2d 384, 469 N.E.2d 1085 (1984), 
Koesterer v. Edgar
, 143 Ill. App. 3d 832, 493 N.E.2d 702 (1986), 
Britt v. Edgar
, 192 Ill. App. 3d 469, 548 N.E.2d 826 (1989), 
Wixon v. Edgar
, 215 Ill. App. 3d 490, 574 N.E.2d 1251 (1991), and 
O'Neil v. Ryan
, 301 Ill. App. 3d 392, 703 N.E.2d 511 (1998), support his reinstatement.  Petitioner claims that driving privileges were reinstated in each of these cases on the petitioner's showing of abstinence and completion of required treatment programs.   

It would appear that petitioner contends that abstinence coupled with completion of a treatment program entitles him to reinstatement as a matter of course.  This argument misses the mark.  Restoration of driving privileges is not automatic.  
Grams
, 263 Ill. App. 3d at 395. 

Petitioner had the specific burden to show that he does not have a current problem with alcohol or that the problem has been resolved and that he would not endanger public safety or welfare.  92 Ill. Adm. Code §1001.440(b) (1991).  Petitioner failed to meet this burden.

Petitioner claimed that, before his DUI arrests, he was only a moderate drinker, consuming only two beers every other two weeks.  This testimony is inconsistent with petitioner's BAC levels of over .20, indicating heavier drinking than reported.  Petitioner admitted that his second DUI arrest ended an eight-month period of abstinence begun for "no reason."  Petitioner admitted he was "not thinking" when he ended his abstinence, became intoxicated and attempted to drive home.  Petitioner's denial or minimization of his drinking habits suggests an unresolved problem with alcohol.  See 
Grams
, 263 Ill. App. 3d at 397-98. 

Petitioner also claims that the hearing officer improperly disregarded the favorable alcohol evaluations.  We disagree.  The record shows that the hearing officer considered Gill's opinion in making his recommendation.  The weight the hearing officer chose to give this evidence was left to his discretion as the trier of fact.  Gill had testified that there were only two possible explanations for petitioner's ability to operate a motor vehicle with BAC levels over twice the legal limit: either petitioner had built up a tolerance to alcohol from years of hard drinking, or else he had an inherited high tolerance.  He further testified that detecting the difference between genetic predisposition and developed tolerance was "extremely hard" and was "just being researched. *** The final words are not in on these things."  The hearing officer responded to this testimony in his findings: 

"The petitioner has yet to provide evidence based on reliable scientific research data that clearly establishes that someone with [a genetic high tolerance to alcohol], and a history of only light to moderate drinking on an infrequent basis, might have the capability to at any time consume the enormous amount of alcohol required to reach BAC levels .23 and .22- and still function with some degree of efficiency."

The administrative body weighs the evidence, makes credibility determinations and resolves conflicting evidence.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992).  We will not reweigh evidence or substitute our judgment for that of the hearing officer.  
Abrahamson
, 153 Ill. 2d at 88.   

Petitioner's reliance on 
Craig v. Edgar
, 165 Ill. App. 3d 270, 519 N.E.2d 112 (1988), is misplaced.  In 
Craig
, the hearing officer rejected the petitioner's favorable alcohol evaluations as suspect based on inconsistencies in witness testimony.  
Craig
, 165 Ill. App. 3d at 272.  We noted on appeal that the alleged inconsistency was due to an error.  When the error was removed, the testimony was consistent and supported the alcohol evaluations.  We concluded that the alcohol evaluations should not have been ignored under these facts.  
Craig
, 165 Ill. App. 3d at 273.     

Unlike 
Craig
, the record here is replete with inconsistencies, principal among them being petitioner's own testimony.  As the evaluation reports were based on petitioner's statements and conduct in counseling, it was reasonable for the hearing officer to doubt the reliability of those evaluations.  

Petitioner next argues that the ruling denied his right to due process insofar as it is based on evidence gathered "via official notice."  Petitioner did not raise this issue before the hearing officer or in the trial court.  Issues not raised before an agency will not be considered for the first time on administrative review.  
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 278, 695 N.E.2d 481 (1998).  This rule applies to constitutional issues despite an agency's inability to decide constitutional objections.  Administrative review is limited to proofs placed before the agency.  
Texaco-Cities
, 182 Ill. 2d at 278-79.    

Petitioner next argues that the hearing officer improperly rejected expert testimony about inherited alcohol tolerance.  Petitioner claims that Gill's unrebutted and unimpeached expert testimony was dispositive on the issue of petitioner's inherited high tolerance to alcohol.  Petitioner concludes that the hearing officer's refusal to accept the testimony and instead conclude that defendant was a heavier drinker than he claimed was improper and imposed an arbitrary evidentiary standard.  We disagree.

The record shows that the hearing officer accepted the 
possibility
 that a person's tolerance to alcohol could be inherited.  The hearing officer simply refused to believe that petitioner here had an inherited high tolerance.  This is within the hearing officer's purview as the trier of fact.  This finding of fact is 
prima facie
 correct and amply supported by the record.

Petitioner's testimony was inherently inconsistent.  He claimed to drink only about four beers every month and as many as five beers on at least three occasions.  Yet, petitioner admitted that he drank 12 beers on the dates of his DUI arrests.  He admitted "feeling fine" at the time of his arrest despite a BAC over .20.  Petitioner claimed he had an inherited high tolerance, yet claimed to feel lightheaded after only five beers.  The hearing officer reasonably concluded that, to the extent that Gill's testimony was based on an evaluation of petitioner and his self-serving statements about past alcohol usage, the testimony was not entitled to great weight.

The hearing officer's decision not to place much weight on Gill's testimony did not impose an arbitrary evidentiary standard, but reflected his assessment of the evidence.  We cannot allow petitioner's argument about inherited tolerance to pass without an observation.  The expert testimony about inherited tolerance explained how petitioner, to quote from his brief, "could ordinarily imbibe a relatively moderate two beers every two weeks while retaining sufficient coordination to drive a car after consuming twelve beers."  Notably absent from the expert testimony was what happened to petitioner's "coordination" on the nights of his two DUI arrests.  On the first occasion he was arrested after ramming into a parked vehicle.  On the second occasion he was arrested after police observed him driving south in a northbound lane of Lake Shore Drive.  Given these circumstances, we, like the hearing officer and the trial court, find the expert testimony about inherited tolerance less than persuasive.  

Last, petitioner contends that the decision was arbitrary and capricious and against the manifest weight of the evidence.  We disagree. 

Agency action is arbitrary and capricious if the agency relies on factors that the legislature did not intend for the agency to consider, fails to consider an issue or offers an explanation for its decision that runs counter to the evidence or is so implausible that it could not be the result of agency expertise.  
City of East St. Louis v. East St. Louis Financial Advisory Authority
, 188 Ill. 2d 474, 487, 722 N.E.2d 1129 (1999).  A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident.  
Robbins
, 177 Ill. 2d at 538. 

The record here does not support a conclusion that the hearing officer acted arbitrarily.  The record shows a thoughtful consideration and careful analysis of all the evidence and testimony presented.  An opposite conclusion is not clearly evident under this record.

The judgment of the circuit court is affirmed.

Affirmed.   

CERDA and WOLFSON, JJ., concur.