CHARLES L. CLARK, Plaintiff-Appellant, v. JESSE WHITE, Secretary of State, Defendant-Appellee.

Fourth District   No. 4—02—0376

Argued January 15, 2003.—Opinion filed September 25, 2003.

Theodore J. Harvatin (argued), of Harvatin Law Offices, P.C., of Springfield, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Leslye Jones-Beatty (argued), Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE MYERSCOUGH delivered the opinion of the court:

In November 1998, defendant, the Secretary of State (Secretary), revoked plaintiff, Charles L. Clark's, driver's license after he was convicted for a third time of driving under the influence of alcohol (DUI). In September 2000, the Secretary denied plaintiff's first request for a restricted driving permit (RDP). In October 2001, the Secretary denied plaintiff's second request for an RDP. In November 2001, plaintiff sought administrative review of the Secretary's October 2001 decision. In April 2002, the circuit court in Sangamon County affirmed the Secretary's decision. Plaintiff appeals, arguing the Secretary's decision is against the manifest weight of the evidence. We reverse.

## I. BACKGROUND

On June 24, 1998, plaintiff was arrested for DUI after he suffered an alcohol-induced blackout while driving home, hit two mailboxes, and landed in a ditch. His blood-alcohol concentration (BAC) was 0.224. On September 21, 1998, the Secretary summarily suspended plaintiff's license pursuant to section 11—501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501.1 (West 1998)). On November 19, 1998, the Secretary revoked plaintiff's driver's license pursuant to section 6—205(a)(2) of the Vehicle Code (625 ILCS 5/6—205(a)(2) (West 1998)). The order revoking plaintiff's license stated he would be eligible for full reinstatement on or after September 21, 2003.

On August 17, 2000, plaintiff received a formal hearing on his first request for an RDP before hearing officer Dan Way. On September 25, 2000, the Secretary adopted Way's recommendation and denied plaintiff's request. On March 27, 2001, plaintiff again requested a formal hearing on his request for an RDP.

On August 31, 2001, hearing officer Brian D. Schwartz conducted a hearing. Plaintiff, the only witness, testified that he works for the University of Illinois at Urbana-Champaign (University) on its carpet maintenance crew. His wife drives him to work because public transportation is not available during the hours he works, 5 p.m. to

3 a.m. Plaintiff also lives approximately 12 miles from his workplace. Plaintiff's job requires him to bring several pieces of carpet-cleaning equipment to buildings throughout the approximately 15-square-mile campus. He normally walks to the buildings he is assigned to clean, pushing the equipment. Occasionally, other employees drive him. He testified that his supervisors have complained to him about the amount of time it takes him to travel between work sites and the necessity of sending other employees to drive him from building to building. He has, however, received no written reprimands or warnings that his continued employment is in jeopardy as a result. Further, he testified that he had been passed over or had to turn down offers for "what they would call an upgrade," to supervise employees while another employee is sick or on vacation, because of his lack of driving privileges.

Plaintiff admitted that he had made untrue statements in a drug and alcohol evaluation he underwent following the June 1998 DUI. Specifically, he stated then that he had only drunk one time between 1993 and 1998 and that he had consumed less alcohol on the night of the accident than he actually did. He stated he did so because he was then "in denial" about his alcoholism and that, in fact, in the year preceding the June 1998 accident, he drank six beers or one pint of whiskey daily. Plaintiff further admitted that on the night of the accident, he drank "an abundance," and the BAC reading of 0.224 several hours after the crash was likely lower than his BAC at the time of the accident.

Plaintiff testified that he stopped drinking after the accident. He completed 79½ hours of treatment and regularly attended Alcoholics Anonymous (AA) meetings. He submitted several letters from friends and acquaintances and one from his wife to corroborate his abstinence from alcohol in the three years between the accident and the hearing. Plaintiff also testified, however, that he had previously abstained from alcohol for extended periods and resumed drinking. Prior to having his driver's license reinstated in December 1990 after his first DUI conviction, plaintiff stopped drinking for a period of "maybe a year at the longest." After his second DUI, he testified to a period of abstinence of nearly two years, although his testimony on direct and cross-examination was unclear as to when that period occurred.

After the August 2001 hearing, the hearing officer found that plaintiff had abstained from drinking alcohol since the June 1998 accident, completed all treatment recommendations, and established an ongoing support system to help him remain sober. He found, however, that plaintiff failed to establish by clear and convincing evidence that the continued denial of his driving privileges caused him undue hard-

ship pertaining to his employment or his ability to attend AA meetings. The hearing officer further concluded plaintiff failed to provide evidence sufficient to prove his alcohol addiction had been resolved or that he would be a safe and responsible driver and not endanger the public safety and welfare.

On October 15, 2001, the Secretary adopted the hearing officer's recommendations and denied plaintiff's request. On November 1, 2001, plaintiff filed a petition for administrative review. On April 18, 2002, the circuit court affirmed the Secretary's decision, finding the decision was not against the manifest weight of the evidence. This appeal followed.

## II. ANALYSIS

Plaintiff contends the Secretary's October 2001 decision to deny his request for an RDP is against the manifest weight of the evidence. We agree.

█ █ Driving a vehicle is a privilege, not a right. Thus, the Secretary is authorized to revoke the license of a driver who demonstrates an unwillingness or inability to exercise that privilege with proper regard for public safety. *Grams v. Ryan*, 263 Ill. App. 3d 390, 395, 635 N.E.2d 1376, 1380 (1994). The public interest in keeping unsafe drivers off the public roads outweighs the individual driver's interest in regaining driving privileges revoked after DUI convictions. Restoration of driving privileges is, therefore, not automatic. *Grams*, 263 Ill. App. 3d at 395, 635 N.E.2d at 1380. Rather, a driver seeking full restoration of driving privileges or an RDP must prove, by clear and convincing evidence, that he or she is entitled to such relief. Where, as here, the revocation of driving privileges was alcohol-related, the driver must prove he or she does not have a current problem with alcohol, poses a minimal risk of committing more DUIs if allowed to drive again, has complied with all requirements specified in the regulations, and will not endanger the public safety or welfare if allowed to drive. *Grams*, 263 Ill. App. 3d at 396, 635 N.E.2d at 1380. To be granted an RDP, a driver must also demonstrate "undue hardship" will result from the denial of such relief. *Grams*, 263 Ill. App. 3d at 396, 635 N.E.2d at 1380.

█ We will not overturn the Secretary's decision unless it is against the manifest weight of the evidence or the result of an arbitrary or capricious exercise of his authority. *Grams*, 263 Ill. App. 3d at 396, 635 N.E.2d at 1380. The decision is arbitrary and capricious if the Secretary relies upon factors the legislature did not intend for him to consider, fails to consider an issue, or offers an explanation for his decision that runs counter to the evidence or is so implausible it could

not possibly be the result of the exercise of administrative expertise. A decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Sanchez v. Ryan*, 315 Ill. App. 3d 1079, 1082, 734 N.E.2d 920, 923 (2000). The Secretary has broad discretion in determining whether full or partial restoration of driving privileges is appropriate in each case. See *Koeck v. Edgar*, 180 Ill. App. 3d 332, 340, 535 N.E.2d 1019, 1024 (1989).

## A. Undue Hardship

■ The Secretary's rules and regulations define "undue hardship" as follows:

" 'Undue [h]ardship as [i]t [r]elates to [e]mployment' means, as used in the context of [s]ections 6—205(c) and 6—206(c)3 of the [Vehicle] Code, an extreme difficulty in regard to getting to or from a petitioner's place of employment or to operate on a route during employment[,] *e.g.*, as delivery person, because of the suspension, revocation, or cancellation of the petitioner's driving privileges. It is more than mere inconvenience on the petitioner and pertains only to the petitioner. All other reasonable means of transportation must be unavailable to the petitioner. An undue hardship is not shown by the mere fact that the driving privileges are suspended or revoked.

\*\*\*

'Undue [h]ardship as [i]t [r]elates to [s]upport/[r]ecovery [p]rogram' means an extreme difficulty in regard to getting to and from a location where a petitioner is participating in an ongoing support program. It means more than mere inconvenience. There must be no other reasonable alternate means of transportation available. An undue hardship is not demonstrated by the mere fact that the petitioner's driving privileges are suspended or revoked." 92 Ill. Adm. Code § 1001.410 (Conway Greene CD-ROM June 2001).

Plaintiff contends the Secretary's determination that he failed to demonstrate undue hardship by clear and convincing evidence is against the manifest weight of the evidence.

In support of his position, plaintiff cites *Britt v. Edgar*, 192 Ill. App. 3d 469, 548 N.E.2d 826 (1989), and *Sutton v. Edgar*, 147 Ill. App. 3d 723, 498 N.E.2d 295 (1986). In those cases, this court concluded that the plaintiffs in *Britt* and *Sutton* had met their burdens of proving undue hardship despite the fact that their employers had taken no adverse action against them as a result of their lack of driving privileges. In *Britt*, 192 Ill. App. 3d at 473, 548 N.E.2d at 829, the plaintiff's employer had notified him that he would be terminated from his position without driving privileges. In *Sutton*, the record did not reflect a threat of future adverse consequences resulting from the

plaintiff's continued loss of driving privileges. Indeed, plaintiff had never missed a day's work because of an inability to get to work. *Sutton*, 147 Ill. App. 3d at 727, 498 N.E.2d at 298. However, Sutton was able to get to work because he was illegally driving himself without a license. *Sutton*, 147 Ill. App. 3d at 732, 498 N.E.2d at 301. No public transportation, car pools, or family transportation was available to him. *Sutton*, 147 Ill. App. 3d at 731, 498 N.E.2d at 301. We found the hearing officer's conclusion that Sutton had failed to demonstrate undue hardship to be against the manifest weight of the evidence because it was based on his finding that Sutton was illegally driving himself to and from work. *Sutton*, 147 Ill. App. 3d at 732, 498 N.E.2d at 301.

Plaintiff in this case is in a similar situation to the plaintiffs in *Britt* and *Sutton*. The facts illustrate that plaintiff has no other *reasonable* means of transportation available. Plaintiff cannot walk to work on a regular basis, as he lives approximately 12 miles from his workplace. No mass transit system is available to plaintiff during his working hours, which are 5 p.m. to 3 a.m. Plaintiff also cannot rely on taxi service to get him to work due to financial constraints and also the unreliability of the service. Further, his wife must forego the opportunity to earn overtime to drive her husband to work. Plaintiff also testified that he suffered health problems from attempting to walk to work in treacherous conditions.

While on the job, plaintiff also suffers a hardship. His work area covers a 15-square-mile campus. Usually plaintiff has to carry heavy cleaning equipment large enough to fill a truck. Plaintiff also frequently imposes on coworkers for rides while on the job. Moreover, plaintiff's supervisors have reprimanded him for the time it takes him to travel from one assignment to the next. Plaintiff also has had to pass up promotions due to the fact that he cannot legally drive.

Plaintiff also cannot attend as many AA meetings as he would like due to his driving situation. The AA meetings are 15 miles away from plaintiff's home. At one point, plaintiff was able to attend about three meetings a week. This attendance dropped to just one meeting a week when his friend with whom he rode moved away. Plaintiff testified that he wished to attend more meetings, but his wife could not give him rides due to a conflict of schedule.

■ Considering this testimony as a whole, plaintiff has shown an undue hardship by clear and convincing evidence. Forcing plaintiff to make a "Hobson's choice" between missing work and forcing his wife to miss overtime does not constitute a reasonable alternative means of transportation. Further, plaintiff has no reasonable alternative means of transportation once he gets to work. The Secretary asks us to adopt

a bright-line rule that to prove undue hardship, plaintiff must show that he will lose his job unless an RDP is granted. We decline to do so. Plaintiff has shown that his inability to drive is more than just a mere inconvenience to himself and his family. Plaintiff in this case is similarly situated to the plaintiffs in *Britt* and *Sutton*, except that plaintiff has not been told he will lose his job. Perhaps *Sutton* is distinguishable because Sutton was illegally driving himself to work. *Sutton*, 147 Ill. App. 3d at 732, 498 N.E.2d at 301. However, we will not penalize plaintiff in this case simply because he refused to break the law to get to work.

Our court held in *Breiner v. Edgar*, 130 Ill. App. 3d 1010, 1016, 474 N.E.2d 1373, 1377 (1985), that "the purpose of the [Vehicle] Code's driver's license revocation procedure is to protect the public safety and welfare and not to punish the person whose license is revoked." However, revocation of driving privileges in any case will cause some level of hardship. The factors to consider in determining whether undue hardship exists that would justify issuing an RDP are the *degree* of hardship imposed by the deprivation of driving privileges and the availability of reasonable alternative means of transportation. See *Christiansen v. Edgar*, 209 Ill. App. 3d 36, 48, 567 N.E.2d 696, 704 (1991). In this case the degree of hardship imposed justifies the issuance of an RDP. We conclude that the record does not support the Secretary's determination that plaintiff failed to carry his burden of proving undue hardship by clear and convincing evidence.

### B. Public Safety and Welfare

Plaintiff next contends the Secretary's determination that he failed to prove he had fully resolved his problem with alcohol and would be a safe and responsible driver if granted an RDP was against the manifest weight of the evidence. We agree.

■ Plaintiff bears the burden of proving, by clear and convincing evidence, that he does not have a current problem with alcohol, he is at a low or minimal risk of repeating his past abusive behaviors and driving a motor vehicle while under the influence of alcohol, and he has resolved his problem with alcohol. 92 Ill. Adm. Code § 1001.440(b) (Conway Greene CD-ROM June 2001). Because he has been classified as a Level III high-risk dependent alcoholic, plaintiff must also prove by clear and convincing evidence that he has abstained from drinking alcohol for at least 12 months, he has completed treatment for his alcohol addiction, he has established an ongoing support/recovery program, and he has complied with any additional recommendations provided by his evaluator or treatment provider. 92 Ill. Adm. Code § 1001.440(b)(3) (Conway Greene CD-ROM June 2001). Plaintiff is

required to submit a drug and alcohol evaluation that contains, among other things, a "complete alcohol and drug use history" and "a history of alcohol and drug-related driving and criminal offenses." 92 Ill. Adm. Code § 1001.440(a)(6)(D) (Conway Greene CD-ROM June 2001).

■ The hearing officer found that plaintiff met his burden of proving most of these requirements. He found, however, that plaintiff did not provide sufficient information concerning his prior DUI arrests or a chronological history of his problem with alcohol in his evaluation. This missing information formed the basis for the denial of his first request for an RDP. The Secretary erroneously relied only on these factors in denying the RDP.

In support of his contention that the hearing officer's reliance on these factors in the face of his favorable findings in other areas was improper, plaintiff cites *Craig v. Edgar*, 165 Ill. App. 3d 270, 519 N.E.2d 112 (1988), *Mohr v. White*, 324 Ill. App. 3d 643, 756 N.E.2d 434 (2001), *Wixon v. Edgar*, 215 Ill. App. 3d 490, 574 N.E.2d 1251 (1991), *Sutton*, and *Britt*. In all five cases, this court found the Secretary's determination the plaintiffs had failed to meet their burden of proving they had addressed their alcohol problems and would therefore be safe and responsible drivers to be against the manifest weight of the evidence.

The facts of each of these cases pale in comparison to the steps plaintiff has taken to address his alcohol problem. Plaintiff testified that he has not had a drink since his last DUI in 1998. Since then, he has completed over 79¹/₂ hours of treatment and regularly attended AA meetings. Several of plaintiff's friends wrote letters to corroborate his abstinence from alcohol since the time of the 1998 accident. Since that time, plaintiff has also undergone significant lifestyle changes. Plaintiff finally realized that he was an alcoholic, and he was honest about his need to get help. Hearing officer Way found that plaintiff had completed all recommendations for treatment. Way also found in his conclusions of law that plaintiff had carried the burden of proving that he was responsibly addressing his alcohol dependency, as he had completed treatment, maintained abstinence for a sufficient period of time, and is participating in a self-help or other appropriate program to support continued abstinence. However, the second hearing officer, Schwartz, disregarded all of this evidence and found that plaintiff had not included a detailed chronological drinking history and also not included detailed information concerning his 1984 and 1991 DUI incidents.

In *Franz v. Edgar*, 133 Ill. App. 3d 513, 522, 478 N.E.2d 1165, 1171 (1985), this court stated "we fail to see how any lack of specificity resulting from the form provided by the Secretary can be relied on

to deny [the plaintiff's] application." There, the evaluator concluded the plaintiff did not have a current drug or alcohol problem. The evaluator identified the objective test he used in reaching his conclusion but did not specify the score. *Franz*, 133 Ill. App. 3d at 521, 478 N.E.2d at 1170-71. The form provided by the Secretary for the evaluation report did not ask for this information. *Franz*, 133 Ill. App. 3d at 521, 478 N.E.2d at 1171. The court concluded the alcohol evaluation was inconclusive as a result. *Franz*, 133 Ill. App. 3d at 521, 478 N.E.2d at 1170.

Here, the standardized form used during plaintiff's alcohol evaluation asked for only two items of information regarding defendant's first two DUI arrests: the date of the arrest and the BAC "if known." However, that form asked plaintiff to provide a detailed description concerning his last or third DUI, which plaintiff provided. The evaluation updates did not require any discussion of the first two DUI arrests. Plaintiff should not be penalized because the standardized evaluation forms did not specifically ask for more detailed information concerning the 1984 and 1991 DUIs. Plaintiff was never questioned by hearing officer Way or Schwartz concerning the previous DUI arrests. Plaintiff has provided all the information that was requested of him. Additionally, the relative weight of this detailed information about plaintiff's 1984 and 1991 DUIs has decreased with the passage of time. See *Britt*, 192 Ill. App. 3d at 474, 548 N.E.2d at 829.

Moreover, plaintiff was already assessed as a Level III high-risk dependent classification. These detailed reports would not have affected plaintiff's classification since he had already been assessed at the highest level possible. Hearing officer Way found that even with this classification, plaintiff had resolved his problem with alcohol.

We note that our " 'sole function here is to ascertain whether the final decision of the administrative agency is just and reasonable in light of the evidence presented.' " *Koesterer v. Edgar*, 143 Ill. App. 3d 832, 835, 493 N.E.2d 702, 704-05 (1986), quoting *Sheldon v. Edgar*, 131 Ill. App. 3d 489, 491, 475 N.E.2d 956, 957 (1985). The evidence that plaintiff utilizes to support his contention that he has resolved his alcohol problem clearly outweighs the "missing" information for which the Secretary is looking.

Moreover, if plaintiff is issued an RDP, he must install a BAIID (breath alcohol ignition interlock device) into his vehicle. 92 Ill. Adm. Code § 1001.441 (Conway Greene CD-ROM April 2001). This prevents plaintiff's vehicle from starting if plaintiff has alcohol on his breath. This device minimizes the possibility of plaintiff again driving drunk. Moreover, plaintiff has already shown by his compliance that he is a minimal risk of repeating past behaviors.

Plaintiff has shown by clear and convincing evidence, as previously found by hearing officer Way, that he has resolved his problem with alcohol. We find that the Secretary's decision was unjust and unreasonable, with the opposite result clearly evident. The denial of plaintiff's request for an RDP is, therefore, contrary to the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we reverse the circuit court's judgment.

Reversed.

KNECHT and TURNER, JJ., concur.